IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KATHERINE MONSON, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>MCCLENNY, MOSELEY & ASSOCIATES; JAMES MCCLENNY; ZACH MOSELEY; TORT NETWORK, LLC; APEX ROOFING & RESTORATION, LLC<br><br>Defendants. | Civil Action No. 4:23-cv-00928 |

### MEMORANDUM IN OPPOSITION TO THE MMA DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

MAY IT PLEASE THE COURT:

Plaintiff, Katherine Monson, individually and on behalf of all others similarly situated, ("Monson"), submits this memorandum in opposition to the motion to dismiss and motion to strike class allegations filed by Defendants, McClenny, Moseley & Associates, PLLC ("MMA Firm"), James McClenny and John Zachary Mosely (collectively the MMA Defendants) as follows:

### INTRODUCTION

The MMA Defendants fail to comprehend the full extent of the allegations made against them and fundamentally misread applicable Texas barratry law. Defendants' motion to dismiss fails to take into account the significant allegations of fact in the Complaint which outline the repeated and extensive solicitation to Monson (and those similarly situated). Similarly, Defendants' challenge to Monson's standing, its challenge to the validity of Monson's asserted

claims, and the objection to the applicability of class action treatment demonstrate a misapplication of both facts and law.

The idea that Monson does not have standing to bring claims for improper solicitation disregards not only the facts that have been alleged but also fails to acknowledge that the State of Texas has directly and specifically empowered persons, including Monson, to seek specific redress for the types of improper communications conducted by the Defendants in this case. Texas statutory law not only recognizes the cause of action but also specially proscribes remedies that, while including actual damages suffered, also goes beyond to allow for a specific statutory penalty for each improper communication. Despite Defendants' unwillingness to acknowledge that reality, Monson has specifically pled that improper solicitation communications were made to her in violation of the controlling law and that, by virtue of the violation, a legal injury is recognized, thus conferring standing. The facts alleged in the Complaint establish the existence of the civil cause of action for barratry that also provides for a remedy in addition to actual damages and upends Defendants' entire motion. This singularly makes any serious consideration of the "standing" argument unnecessary.

Furthermore, Defendants' surface-level analysis that the improper solicitation scheme hatched in Texas for the benefit of Texas attorneys, authorized by Texas attorneys, directed by Texas attorneys for the benefit of those same Texas attorneys, is somehow extra-territorial and not redressable by the Texas barratry law is also unavailing. Despite the targets of the improper solicitation communications being based in Louisiana, those solicitation communications were created for Texas attorneys, for the benefit of a Texas based law firm, and were directed by the Texas law firm. Defendants should not be allowed to claim immunity from Texas law simply

because the targets of their scheme are on the east side of the Sabine River. The Complaint alleges much of the objectionable actions were undertaken in Texas for the benefit of Texas attorneys, and that is sufficient for the Texas barratry law to apply to Monson's claims.

Additionally, the suggestion that facts have not been alleged stating a claim that Monson was a person who was solicited by conduct violating Texas Disciplinary Rules of Professional Conduct §7.03 or Tex. Penal Code §38.12, flies in the face of the first 57 paragraphs of the Complaint. Monson was systematically and repeatedly solicited by a barrage of communications seeking to pressure Monson to sign up for legal services with a Texas law firm. Such solicitation was in violation of both §7.03 and §38.12, thus making Defendants liable under Tex. Gov't Code §82.0651.

Finally, Defendants' efforts at dismissal of class action allegations at this stage in the litigation is simply unavailing. Monson is confident that a class of similarly situated persons will be established at the appropriate time, but the standard required of this Court at the motion to dismiss stage establishes the class allegations pleaded are more than sufficient. Despite the suggestion otherwise, individual issues do not predominate. The common issues as it relates to all class members are that the MMA Defendants violated Texas barratry law, most elementally, among other things, in failing to include the word "Advertisement" in their various solicitation communications to class members. The scheme created by the MMA Defendants in which they failed to reveal the firm's involvement in the initial solicitation communications, and many subsequent communications as pled, will focus on the nature of those improper communications as opposed to potential individual issues of the state of mind of those receiving the improper communications. It is unnecessary to address the impact on each class member the improper

solicitations had. Rather, it is simply a process of identifying the forms of communications utilized in the scheme to assess whether they complied with law.

For the reasons provided, the MMA Defendants' Motion to Dismiss and Motion to Strike should be denied.

## FACTS

The well pled facts of the Complaint contain the following allegations that are germane to the MMA Defendants' effort to seek dismissal at this stage:

10.

MMA and Velawcity entered into several "Marketing Service Agreements" on December 8, 2021, February 5, 2022, May 5, 2022, May 23, 2022, and August 2, 2022 ("MSA" or "MSAs").

11.

In these MSAs, Velawcity stated that it would be acting as an agent of MMA to reach out to potential clients on MMA's behalf and provide potential clients with MMA's engagement letter.

12.

MMA agreed in these MSAs to pay Velawcity a set amount per "pre-screened potential client" that was "delivered" to MMA.

13.

In total, through these Marketing Service Agreements, MMA paid Velawcity in advance a minimum of $13,938,000 for at least 4,628 clients.

14.

These MSAs were executed by Velawcity and MMA in Texas.

15.

To deliver on its obligations under these MSAs, Velawcity sent out unsolicited communications to thousands of individuals, including Plaintiff, via text message and other means, that the recipient has a hurricane storm damage claim pending.

16.

These communications contained a link to a form and stated that the form needed to be filled out in order to claim compensation. Some of these communications even contained specific instructions for how the recipient should answer the questions on the form.

17.

These communications did not contain the word "ADVERTISEMENT" or in any other way indicate that they were advertising material for MMA or MMA's services.[1]

Furthermore, as pled in the Complaint, Monson received various forms of communications from Velawcity multiple times on July 17, 2022, and on July 18, 2022, July 27, 2022, July 30, 2022, and

---

[1] See Complaint, ¶¶10-17

August 2, 2022.[2] Significantly, the Complaint provides:

39.

The "intake" completed with a "representative" was undertaken by a company called Tort Network, LLC d/b/a Velawcity. Plaintiff also received over 120 emails from Velawcity, one each day, asking her to execute an Employment Contract the Velawcity representatives sent contracts via email to Plaintiff on a daily basis from 8:54 a.m. on July 17, 2022 for at least 120 days in order to sign her up as a client for MMA.[3]

Monson also alleged in the Complaint that Velawcity does business in Texas and for the benefit of principals [MMA] in the State of Texas.[4] The Complaint further alleges Velawcity operated a call center pursuant to its contracts with MMA and reached out to potential clients to obtain signed contracts for the benefit of MMA.[5] In making some of these contacts, Velawcity told these potential clients they were calling on behalf of the Velawcity Law Firm.[6] If Velawcity personnel were not able to induce unwitting persons to sign up with MMA, Velawcity would inundate individuals with a daily barrage of emails claiming their potential claim would expire in a certain amount of days if the person did not act.[7] Monson further alleged that "all of these communications were sent by Velawcity at the direction of and for the benefit of William McClenny and John Zachary Mosely, principals of MMA, both of which are attorneys licensed to

---

[2] Id. at ¶¶19-38.
[3] Id. at ¶39
[4] Id. at ¶41
[5] Id. at ¶44
[6] Id. at ¶46
[7] Id. at ¶53

practice and practicing in the State of Texas."[8] None of these communications contained the word "ADVERTISEMENT" as is required for such solicitation communications.[9] Finally, "MMA, and its principals, knowingly compensated Velawcity for its performance of barratry and solicitation of employment for MMA's economic benefit in violation of Texas law."[10]

As for an injury in fact, the Complaint provides that Monson (and all members of the class) are entitled to obtain damages in the form of $10,000 for each person who was solicited by the prohibited barratry. A remedy specifically proscribed by Texas law. See. Tex Gov. Code §82.0651(d). [11]

## LAW AND ARGUMENT

### A. The Complaint Alleges Violations of Texas Barratry Laws

Critical to the assessment of Monson's Complaint, and the MMA Defendants' motion to dismiss, are the Texas barratry laws. A review of the controlling statutes makes it apparent that the MMA Defendants' claims simply fall flat, as Monson's Complaint alleges facts that are in lock step with the purpose of those statutes.

Texas Government Code §82.0651, Civil Liability for Prohibited Barratry, provides:

(a) A client may bring an action to void a contract for legal services that was procured as a result of conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys **or other persons**, and to recover any amount that may be awarded under Subsection (b). A client who enters into a contract described by this subsection may bring an action to recover any amount that may be awarded under Subsection (b) even if the contract is voided voluntarily.

(b) A client who prevails in an action under Subsection (a) shall recover from **any person who committed barratry**:

---

[8] Id. at ¶42
[9] Id. at ¶54
[10] Id. at ¶57
[11] Id. at ¶115

      (1)      all fees and expenses paid to that person under the contract;

      (2)      the balance of any fees and expenses paid to any other person under the contract, after deducting fees and expenses awarded based on a quantum meruit theory as provided by Section 82.065(c);

      (3)      actual damages caused by the prohibited conduct;

      (4)      a penalty in the amount of $10,000; and

      (5)      reasonable and necessary attorney's fees.

(c) A person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys **or other persons**, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

(d) A person who prevails in an action under Subsection (c) shall recover from each person who engaged in barratry:

    (1) a penalty in the amount of $10,000;

    (2) actual damages caused by the prohibited conduct; and

    (3) reasonable and necessary attorney's fees.

V.T.C.A Government Code §82.0651 (emphasis added).

As noted, to recover for a claim under §82.0651, the attorney, or other person, can violate either Penal Code §38.12 or Texas Disciplinary Rules of Professional Conduct 7.03. The pertinent parts of that statute and that rule, are as follows:

§38.12, Penal Code, Barratry and Solicitation of Professional Employment

(a) A person commits an offense if, with intent to obtain an economic benefit the person:

* * *

(2) solicits employment, either in person or by telephone, for himself or for another;

* * *

(4) pays or gives or offers to pay or give a person money or anything of value to solicit employment;

* * *

(6) accepts or agrees to accept money or anything of value to solicit employment.

(b) A person commits an offense if the person:

(1) knowingly finances the commission of an offense under Subsection (a);

(2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a); or

(3) is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Subsection (a).

V.T.C.A. Penal Code §38.12

Rule 7.03, Solicitation and Other Prohibited Communications:

(a) The following definitions apply to this Rule:

(1) "Regulated telephone, social media, or other electronic contact" means telephone, social media, or electronic communication initiated by a lawyer, **or by a person acting on behalf of a lawyer,** that involves communication in a live or electronically interactive manner.

(2) A lawyer "solicits" employment by making a "solicitation communication," as that term is defined in Rule 7.01(b)(2).[12]

* * *

(c) A lawyer shall not send, deliver, or transmit, or **knowingly permit or cause another person to send, deliver, or transmit**, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

---

[12] Rule 7.01(b)(2) provides: A "solicitation communication" is a communication substantially motivated by pecuniary gain that is made by **or on behalf** of a lawyer to a specific person who has not sought the lawyer's advice or services, which reasonably can be understood as offering to provide legal services that the lawyer knows or reasonably should know the person needs in a particular matter. V.T.C.A. Govt. Code T. 2, Subt. G. App. A, Art 10, §9, Rule 7.01 (emphasis added).

(d) A lawyer shall not send, deliver, or transmit, **or knowingly permit or cause another person to send, deliver, or transmit**, a solicitation communication to a prospective client, if:

(1) the communication is misleadingly designed to resemble a legal pleading or other legal document; or

(2) **the communication is not plainly marked or clearly designated an "ADVERTISEMENT"** unless the target of the communication is:

(i) another lawyer;

(ii) a person who has a family, close personal, or prior business or professional relationship with the lawyer; or

(iii) a person who is known by the lawyer to be an experienced user of the type of legal services involved for business matters.

**(e) A lawyer shall not pay, give, or offer to pay or give anything of value to a person not licensed to practice law for soliciting or referring prospective clients for professional employment**, except nominal gifts given as an expression of appreciation that are neither intended nor reasonably expected to be a form of compensation for recommending a lawyer's services.

V.T.C.A. Govt. Code T. 2, Subt. G. App. A, Art 10, §9, Rule 7.03 (emphasis added)

As clearly alleged in the Complaint, Monson received communications from Velawcity that were directed for the benefit of the MMA Defendants for purposes of MMA gaining employment. The complaint alleges those communications were improper and in violation of Texas barratry law. At a minimum, none of those communications include the words Advertisement, so even if the communications could somehow be construed not to be violative of the statute for other reasons, there is a clear violation of that technical requirement.

B. **The Complaint Establishes Standing for Monson and Confers Subject Matter Jurisdiction**

1. **The Subject Matter Jurisdiction Standard**

The MMA Defendants' standing issue requires this Court, as a threshold matter, to

determine whether it has subject matter jurisdiction. Fifth Circuit law on this point was succinctly stated as:

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281F.3d 158, 161 (5th Cir. 2001); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming*, 281 F.3d at 161, citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted **only if it appears certain** that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Louisiana State Conference of National Association of Advancement of Colored People v. Louisiana*, 490 F.Supp.3d 982, 997 (M.D. La. 2020) (emphasis added). When considering Monson's standing, this Court should only dismiss the Complaint if it appears certain Monson has not established standing. A review of the facts alleged and applicable law demonstrate no such finding can be made as Monson has firmly established standing.

### 2. Violation of Barratry Statutes Confers Standing On Persons to Whom Communications Were Targeted

The MMA Defendants' primary claim for lack of subject matter jurisdiction relies upon its myopic reading of the allegations asserted against it. Ostensibly, Defendants claim that Monson has not alleged an injury in fact to demonstrate standing to sue. This claim completely disregards the facts as alleged in the Complaint. In short, Monson alleges that Velawcity contracted with MMA to improperly solicit clients for MMA and for the benefit of its principals, and in fact Velawcity directed solicitation communications at Monson, and those similarly situated, to attempt to procure employment of legal services for MMA. Furthermore, the Complaint alleges

Velawcity was handsomely compensated for those efforts by MMA. Specifically, Monson alleges Defendants violated Texas barratry statutes, §82.0651.[13]

The MMA Defendants have chosen to disregard that standing has been conferred on persons such as Monson that make allegations of the violation of §82.0651, despite the fact that such claims are the very purpose of the statute. In discussing the purpose of §82.0651, a Texas appeals court has provided:

> Since its 2011 enactment, the purpose of the Texas Government Code section 82.0651 has been "to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651(e), 2011 Tex. Gen. Laws 534, 535 (amended 2013); *see also Nguyen*, 605 S.W.3d at 782. Consistent with this purpose, a person, including a client, has the right to be free from solicitation that violates the laws of the State of Texas or the Texas Disciplinary Rules of Professional Conduct regarding barratry. *See Nguyen*, 605 S.W.3d at 782–83; *see also* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651, 2011 Tex. Gen. Laws 534, 535 (amended 2013).

*Brumfield v. Williamson*, 634 S.W.3d 170, 199 (Tex. Ct. App. Houston, 1st Dist., 2021). In recognizing the purpose of the statute in question, the *Brumfield* court concluded that "[i]t also necessarily follows that a plaintiff suffers 'legal injury' under Texas Government Code section 82.0651(a) when he is solicited through improper conduct that violates the laws of the State of Texas or the Texas Disciplinary Rules of Professional Conduct regarding barratry." *Id.* at 199.

The violation of the statute itself, and the proscribed remedies contained therein, provides the cause of action and evidence of the legal injury. Despite concluding that a barratry civil action did not exist in the case in question because the plaintiffs in that case were not actually solicited by the defendant attorneys, a Texas appeals court in *Nguyen v. Watts*, 605 S.W.3d. 761, 778 (Tex. Ct.

---
[13] See Facts as more fully described above.

App. Houston, 1st Dist., 2020) nonetheless acknowledged that "a private right of action under Subsection 82.0651(c) may be brought by a person who has been solicited by conduct violating Penal Code Subsections 38.12(a) or (b) or Disciplinary Rules 7.02." Therefore, standing is conferred when a plaintiff alleges that it was subject to improper solicitation, as those alleged violations are necessarily redressable. There is no dispute that MMA paid Velawcity millions of dollars to improperly solicit, which has already been admitted by attorneys retained by MMA.[14]

Likewise, the State of Texas in its wisdom also proscribed a specific remedy for those violations. As alleged in the Complaint, Monson establishes that multiple violations by Velawcity and MMA of Penal Code subsections 38.12(a) or (b) or Disciplinary Rules 7.03 occurred. Thus, a statutorily recognized injury in fact did occur and because the controlling statute proscribes a remedy over and above actual damages, Monson does not have to demonstrate actual damages to have standing to sue. Section 82.0651 provides that in addition to actual damages and attorneys' fees and costs, both individuals that signed a contract of employment through improper solicitation and those merely improperly solicited, can recover $10,000, regardless of whether actual damages can be proven. Tex. Gov. Code §82.0651 (b)(4) and (d)(1).

### 3. The Claims Asserted Are Based In Texas

The MMA Defendants further seek dismissal on the argument that Texas barratry claims cannot apply to a scheme targeting Louisiana residents. However, this Court need not address whether the Texas barratry claims apply extraterritorially, as it is apparent that, because the

---

[14] See Transcript of Proceedings, March 3, 2023 *Tricia Rigsby Franatovich v. Allied Trust Insurance Company*, 22-2552 c/w 22-4927 (USDC, E.D. La.) pp. 5, Ln. 11 to p. 7 ln.12, provided as Exhibit A to Velawcity's Motion To Dismiss in this matter (Rec. Doc No. 14-1).

scheme was hatched by Texas lawyers and the offending actions were planned and directed for the benefit of Texas lawyers, the claims are based in Texas, and thus, Texas barratry laws apply.

In a case with a similar fact pattern, a Texas appeals court reversed a summary judgment finding that the attorneys involved in a case running scheme for Louisiana and Arkansas plaintiffs in two separate auto accident cases were Texas lawyers, licensed by the Texas Bar, and who directed the scheme from their Texas offices were subject to Texas barratry laws, despite the improperly solicited clients being out of state. *Cheatham v. Pohl,* 2022 WL 3720139, *8 (Tx. Ct. App. Houston, 1st Cir. 2022). Significant to the assessment by the Court were facts that the Texas based attorneys knowingly financed the solicitation and knowingly accepting employment as the result of the solicitation, all while in Texas. *Id.* at *8. The Texas appeals court acknowledged that it was the first to be asked to consider whether Texas barratry statutes applied extraterritorially, but ultimately declined to undertake the analysis as the evidence presented established the scheme was run from Texas for the benefit of Texas attorneys.

Similarly, in the present case, the facts pled are that Velawcity contracted with MMA, a Texas law firm, to solicit clients for that Texas law firm. The extremely lucrative contracts paid by the Texas law firm, MMA, to obtain clients demonstrate the scheme worked to the benefit of the Texas attorneys, the MMA firm and its principals McClenny and Moseley. Moreover, no solace can be found in any claim that because only Louisiana residents were improperly soliciting, it is not subject to Texas barratry law. In analyzing a similar argument made by the case runners in *Cheatham*, the Texas appeals court concluded that because the Texas Penal Code, Section 1.04, permits criminal liability to attach when part of the relevant events occur out of state, such as when the conspiratorial conduct of the case runners is in furtherance of a conspiracy that

occurs within the state of Texas, the case runners were also subject to criminal liability, and thus could be liable under §82.0651. *Id.* at 2022 WL 3720139, *9. Accordingly, it was not the civil liability statute that applied to out of state conduct, but that of the Penal Code.

Likewise, in the present case, the Defendants' actions directed at Louisiana residents were in furtherance of the conspiracy to commit the barratry violations in the state of Texas. Accordingly, the actions of the MMA Defendants and Velawcity were not extraterritorial. As Monson has standing to bring the claims she did, this Court has subject matter jurisdiction to consider these claims.

**C. The Complaint States a Claim Upon Which Relief Can Be Granted**

**1. The Motion to Dismiss Standard Provides A Low Bar For Stating A Claim**

The standard for assessing whether a complaint can withstand a challenge under FRCP 12(b)(6) was recently summed up by the Fifth Circuit as follows:

> To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court accepts well-pled facts as true and "view[s] them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quotation marks and citation omitted). Dismissal is appropriate if the facts pled are not enough to state a facially plausible claim for relief. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013). Plausibility is not akin to probability, but instead, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quotation marks and citation omitted). "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).

*Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022). Even if this liberal standard was not applied, it is evident that Monson has stated a claim upon which relief can be granted.

### 2. Monson Has Stated A Claim For Improper Solicitation Against the MMA Defendants

Monson has asserted specific facts establishing that Velawcity and the MMA Defendants engaged in an improper solicitation scheme to sign up clients. The majority of the first 57 paragraphs of the Complaint set forth specific allegations of the use of texts, emails and other communications specifically directed at Monson. The allegations include specific dates upon which such communications were received, as well as the content of the communications. These well-pled facts must be accepted as true. It appears that the MMA Defendants have disregarded that not only can clients that were improperly solicited make claims under §82.0651, but also persons that are improperly solicited that do not retain the attorneys' services. Tex Gov. Code §82.0651 (c), provides:

> (c) A person who was solicited by conduct violating **Section 38.12(a) or (b), Penal Code**, or **Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct** of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

Defendants' suggestion that Monson has not stated a claim because she did not have an existing client relationship,[15] is simply not the law. Persons that do not enter into a contract are also authorized to file a civil action against the attorney or "other person" committing barratry.

Likewise, the claim that Texas law does not apply to Monson, a plaintiff in Louisiana, is equally unavailing. As set forth above, it is recognized that when a matter involves Texas lawyers, directing a scheme from Texas, and contracting with others to conduct a scheme, Texas law applies. *Cheatham v. Pohl,* 2022 WL 3720139, *8 (Tx. Ct. App. Houston, 1st Cir. 2022).

---

[15] See the MMA Defendants' Motion to Dismiss, p. 12 (Rec Doc No. 25).

### D. Monson's Class Action Allegations Should Stand

Finally, the MMA Defendants challenge Monson's ability to maintain a class action at the pleadings stage. This simply is premature. Monson has provided sufficient allegations to allow consideration of the potential class action status to move forward. At the appropriate time, Monson will seek class certification and the class issues can be fully vetted at that time.

In seeking independent dismissal of the class allegations, the MMA Defendants focus on two aspects, the alleged broadness of the class definition and the sufficiency of class allegations on the predominance requirements of Rule 23(b)(3). In doing so, Defendants suggest the class definition is overbroad because some class members were solicited to enter into a contract, while other class member were solicited without entering a contract and thus cannot demonstrate injury.[16] As discussed above, the MMA Defendants misinterpret the law. The barratry statute provides a right of recover to both those contracting as a result of improper solicitation and those subject to improper solicitation without contracting. Defendants' collective actions of improper solicitation will be the predominate issue.

### E. Modification Of Class Definitions Are Common

A district court should not grant dismissal solely based on alleged questions about a class definition. As acknowledged in *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (U.S. Fifth Cir. 2004), "holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition. District courts are permitted to limit or modify class definitions to provide the necessary precision." The Fifth Circuit further noted:

---

[16] See the MMA Defendants' Motion to Dismiss, p. 17 (Rec Doc No. 25).

> See, e.g., *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir.1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly"); *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659 (N.D.Ill.1989) ("[I]t is certainly within this court's discretion to limit or redefine the scope of the class"); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D.Ga.1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class.") (citations omitted).

*Id.* at 414, Fn. 7. See also, *Bear Creek Bible Church v. Equal Employment Opportunity Commission*, 571 F. Supp.3d 571, 592 (N.D. Tx – Ft Worth Div., 2021). Accordingly, this Court does not have to evaluate the scope of the class definition at this stage. Monson will be required to carry the burden of establishing the appropriateness of the class, including the class definition when the motion to certify the class is filed.

However, even if the Court does choose to evaluate the class definition, the present definition is appropriate as it seeks to define the class members of each person that was improperly solicited for the benefit of MMA. Despite whether the scheme was directed through Velawcity or others, Texas barratry law was violated. Accordingly, the class definition at this stage of the litigation is sufficient and the Court should not allow any concerns that may exist about the class definition at this state serve as a basis to dismiss the class allegations.

### 1. MMA's Actions Are The Predominate Issue.

Rule 23(b)(3) of the Federal Rules of Civil Procedure requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. Determining whether predominance exists requires "identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Bell Atlantic Corp. v. AT & T Corp.*, 339 F.3d 294, 301 (5th Cir.2003).

In this case, the common nucleus of operative facts are that all class members were sent solicitations by Velawcity, at the direction of MMA, that were improper solicitation communications violative of Texas barratry law. Thus, the issue of the form and manner of the communications shared predominates.

Unlike the issues in the *Texas Law Shield v. Crowley*, 513 S.w.3d. 582 (Tex. App. – Houston, 14th Dist., 2016), the focus of this case is on the actions of Velawcity and MMA. A class action can be maintained in this case regardless of whether class members signed up with MMA or not. For liability to be established in this case, it does not require that class members to prove they signed up with MMA. Liability can be established simply by demonstrating that the communications violated Penal Code §38.12 and Texas Disciplinary Rule §7.03. As demonstrated by multiple communications quoted in the Complaint, it is clear that the improper communications did not ever include the term "Advertisement." As the nature and existence of the communications are the predominate issues, class action is appropriate. Accordingly, the MMA Defendants' motion to dismiss should be denied.

## **CONCLUSION**

The MMA Defendants' effort to seek dismissal on the pleadings is ineffective. Defendants have demonstrated an unwillingness to read the allegations made against them and the nature of the claims asserted by Monson. A full review of the allegations made in the Complaint establishes that Monson has standing to assert the claims she has, that the claims are ones upon which relief can be granted, and that the class action allegations are sufficient to proceed forward in this matter.

For those reasons, the MMA Defendants' motion to dismiss and motion to strike should be denied.

Respectfully Submitted:

*s/Jonathan P. Lemann*
Jonathan P. Lemann
Attorney-in-Charge
Texas Bar No. #24054333
Southern District of Texas Bar No. #1012895
lemannjp@couhigpartners.com

**COUHIG PARTNERS, LLC**
3250 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
(504) 588-1288
(504) 588-9750 *fax*

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of June, 2023, the foregoing document was filed with the Court via the Court's CM/ECF system and served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

*s/Jonathan P. Lemann*
Jonathan P. Lemann
