United States District Court
Southern District of Texas

**ENTERED**

November 22, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Katherine Monson, individually and on behalf of others similarly situated, §§§§ | |
| *Plaintiff,* §§ | § Case No. 4:23-cv-00928 |
| v. §§ | |
| McClenny, Moseley & Associates, PLLC; James McClenny; John Zachary Moseley; Tort Network, LLC; and Apex Roofing and Restoration, LLC §§§§§§ | |
| *Defendants.* § | |

## MEMORANDUM AND RECOMMENDATION

Three motions are pending in this putative class action suit, which was referred to the undersigned judge. Dkt. 38. Defendant Tort Network LLC d/b/a Velawcity ("Velawcity") and Defendants McClenny, Moseley & Associates, PLLC, James McClenny, and John Zachary Moseley ("MMA Defendants") (collectively with Velawcity, "Defendants") filed separate motions to dismiss all claims. Dkt. 14, 25. While those motions were pending, Plaintiff Katherine Monson filed a motion for leave to file an amended complaint. Dkt. 39.

After carefully considering Defendants' motions to dismiss, Monson's responses, Dkt. 21, 29, Velawcity's reply, Dkt. 28, and the applicable law, it is

recommended that both motions be granted, and that Monson's claims be dismissed without prejudice for failure to demonstrate standing.  It is further ordered that Monson's motion for leave to amend be denied as moot.

## Background

This suit alleges that the MMA Defendants, who are Texas lawyers, together with Velawcity, an Arizona-based legal marketing firm, improperly solicited clients in Louisiana.  The following facts, taken from Monson's complaint, are taken as true at this stage.

After multiple hurricanes hit Louisiana in 2020 and 2021, many property owners had trouble getting insurers to pay claims for storm damage. *See* Dkt. 1 at 4.  To recruit those property owners as clients, MMA Defendants contracted with Velawcity to advertise and market MMA Defendants' services in Louisiana.  *Id.* at 4-5; Dkt. 25 at 1.

Velawcity allegedly sent out unsolicited communications via text message and email to thousands of individuals, including Monson, telling recipients that they had a pending claim for hurricane storm damage.  Dkt. 1 at 5. The messages contained a hyperlink to a form and directed recipients to complete the form to claim compensation.  *Id.*  These messages allegedly failed to disclose that the communications were, in fact, advertising material for MMA Defendants.  *Id.*

After Monson followed the link and filled out the form, she purportedly received more communications encouraging her to sign an online retention agreement with MMA Defendants that would authorize them to pursue her claim. *Id.* at 6-10.  Monson did not sign the retention agreement. *Id.* at 8.

Monson filed a putative class action suit alleging Velawcity and MMA Defendants' conduct constitutes unlawful barratry under Texas Government Code § 82.0651(c).  Monson asserts, among other theories, that Velawcity solicited employment for MMA Defendants in violation of Texas Penal Code § 38.12(a)(2); MMA Defendants knowingly financed the commission of such solicitation in violation of Texas Penal Code § 38.12(b)(1); and MMA Defendants knowingly permitted or caused Velawcity to send solicitation communications to prospective clients without clearly marking the communications as advertisements, in violation of Rule 7.03(d)(2) of the Texas Disciplinary Rules of Professional Conduct.  Dkt. 1 at 25-26.  Monson asserts that a person who was solicited by conduct violating those provisions can sue for statutory damages, pursuant to § 82.0651(c).  *See* Dkt. 1 at 26.

Defendants moved to dismiss contending, among other arguments, that Monson lacks standing under Article III of the U.S. Constitution.  Dkt. 14 at 4-9; Dkt. 25 at 6-10.  Monson responded to both motions, Dkt. 21, 29, and Velawcity filed a reply, Dkt. 28.  The motion is ripe for resolution.

## Legal standard

"Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Id.* at 287. The plaintiff bears the burden to establish that subject-matter jurisdiction exists. *Id.* at 286.

## Analysis

Although Defendants raise multiple grounds for dismissal, their threshold challenge targets this Court's jurisdiction. Among other things, Defendants argue that Monson's complaint fails to articulate a basis for standing under Article III. Dkt. 14 at 4-6; Dkt. 25 at 4-8. Citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021), Defendants maintain that Monson does not allege she suffered an actual injury and thus lacks standing under Article III. Dkt. 14 at 4-5; Dkt. 25 at 7. Monson counters that Defendants' violations of the Texas anti-barratry statute, by sending her unsolicited requests to retain the MMS

4

Defendants as her counsel, give her standing to sue.  Dkt. 21 at 2; Dkt. 29 at 2.  Because the Court concludes that Monson has not adequately pleaded a cognizable injury-in-fact, it declines to reach the remaining issues.

## I. A plaintiff must articulate a concrete injury to establish her standing to sue.

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'"  *TransUnion*, 141 S. Ct. at 2203.  "For there to be a case or controversy …  the plaintiff must have a 'personal stake' in the case—in other words, standing."  *Id.*  That, in turn, requires a plaintiff to demonstrate (1) a "concrete and particularized" injury in fact (2) that is fairly traceable to the defendant's conduct and (3) redressable by this Court.  *Spokeo*, 578 U.S. at 338 (internal citations omitted).  "Where … a case is at the pleading stage, the party invoking federal jurisdiction bears the burden of establishing these elements" and "must clearly allege facts demonstrating each element."  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Failure to do so leaves the federal court with no case or controversy to resolve under Article III.  *See TransUnion*, 141 S. Ct. at 2203.

## II. Monson has not alleged a concrete injury-in-fact.

In response to Defendants' motions to dismiss, Monson asserts that "any serious consideration of the 'standing' argument is unnecessary" because the Texas legislature has created a civil cause of action for barratry along with

"specific statutory penalties for each improper communication." Dkt. 21 at 2; Dkt. 29 at 2. The U.S. Supreme Court has rejected this premise.

In *Spokeo*, the Supreme Court held that "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it." 578 U.S. at 341. There, Spokeo had allegedly reported inaccurate information about Robins, in violation of the Fair Credit Reporting Act ("FCRA"). *Id.* at 335-36. The FCRA also gave Robins a right to sue for statutory damages. *Id.* at 335. Nevertheless, the Court emphasized that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341.

The *Spokeo* decision also provides a framework for determining if a concrete harm exists. Under that framework, courts must examine (1) whether an alleged injury "has a close relationship to a harm that has traditionally been regarded as a basis for a lawsuit" at common law, and (2) Congress's intent in "elevat[ing] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 341 (quoting *Lujan*, 504 U.S. at 578). "[B]oth history and the judgment of Congress play an important role" in determining whether an injury stemming from a statutory violation is sufficiently concrete. *Id.* at 340.

Following *Spokeo*, the Supreme Court elaborated on the injury requirement in *TransUnion*. Once again, the Court emphasized that

6

"Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 141 S. Ct. at 2205. Expanding on *Spokeo*, the *TransUnion* opinion cautioned that "[a]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* Only in the latter category—where a plaintiff has been "*concretely harmed* by a defendant's statutory violation"—does Article III permit the plaintiff to sue for a statutory violation in federal court. *See id.* And to meet that requirement, the plaintiff must show that the asserted statutory violation caused an injury that is closely related to a traditionally recognized harm. *See id.* at 2213 (holding incorrect formatting of credit files lacked this relationship with "a harm traditionally recognized as providing a basis for a lawsuit in American courts").

Here, Monson has failed to allege a concrete injury-in-fact. *See* Dkt. 14 at 6; Dkt. 25 at 8; Dkt. 28 at 2. Monson merely asserts that she received unsolicited communications that violated Texas's anti-barratry statute, Tex. Gov't Code § 82.0651(c). Dkt. 1 at 6-9, 19. But the complaint does not assert that Defendants caused her any harm apart from the violation itself. *See* Dkt. 1 at 26. Even when confronted with Defendants' motion to dismiss, Monson

still did not articulate any concrete harm.  *See* Dkt. 21 at 2; Dkt. 29 at 2.  And unlike some of the putative class members, Monson cannot assert a financial injury because she did not retain MMA Defendants' legal services.[1]  *See* Dkt. 1 at 8; Dkt. 14 at 15; Dkt. 25 at 16.

Instead, citing Texas cases, Monson maintains that her receipt of solicitations that violated § 82.0651(c) constitutes a "legal injury."  *See* Dkt. 21 at 12 (quoting *Brumfield v. Williamson*, 634 S.W.3d 170, 199 (Tex. App.— Houston [1st Dist.] 2021, pet. denied)); Dkt. 29 at 12 (same).  This is precisely what the Supreme Court deems insufficient, as "an injury in law is not an injury in fact."  *Transunion*, 594 U.S. at 2205; *see also Spokeo*, 578 U.S. at 341 (statutory violation, alone, does not automatically constitute an injury-in-fact). And without a concrete injury-in-fact, Monson lacks standing to bring the claim in federal court.  *See Spokeo*, 578 U.S. at 341 (statutory violation "divorced from any concrete harm" is insufficient).

Moreover, the parties have not cited, and the Court has not found, any cases applying *Spokeo*'s and *Transunion*'s framework to a barratry statute. Decisions do address other kinds of communications, but in the context of the Telephone Consumer Protection Act ("TCPA") and the Fair Debt Collection

---

[1] Even if unnamed class members have a viable basis for standing, that would not remedy Monson's lack of standing.  *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f the class representative lacks standing, then there is no Article III suit to begin with ....").

Practices Act ("FDCPA").  Even in those contexts, however, the Fifth Circuit has required plaintiffs to identify—and plead—a cognizable harm that shares a close relationship with a traditionally-protected right.  *Compare, e.g.*, *Cranor v. 5 Star Nutrition*, 998 F.3d 686, 689 (5th Cir. 2021) (plaintiff pleaded an adequate relationship between the injury resulting from the TCPA violation and common-law nuisance by alleging that "aggravating and annoying text messages" depleted his telephone's battery life and consumed his allocated minutes), *with Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 820, 823-25 (5th Cir. 2022) (merely alleging confusion and waste of time from misrepresentations by debt collector failed to show a concrete injury; these theories were not analogous to any traditional common-law tort).

But here, Monson makes no attempt to identify any traditionally protected right that equates to the harm protected by the Texas anti-barratry statute.  She claims no annoyance, no intrusion on privacy, or any other harm that shares a conceivable common-law analogue.  Quite the contrary, Monson refuses to acknowledge that this is indispensable to her standing to sue.

It is not this Court's "job to conjure up possible theories that could carry a litigant's burden." *See Perez*, 45 F.4th at 825 (internal quotation marks omitted).  And the Court need not "accept subject matter jurisdiction based on theories not actually presented by the parties." *Abraugh v. Altimus*, 26 F.4th 298, 305 (5th Cir. 2022).   Given her failure to address the controlling

9

framework, Monson has waived any potential basis for standing.  *See Ctr. For Biological Diversity v. U.S. Env't Prot. Agency*, 937 F.3d 533, 542 (5th Cir. 2019) ("Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived.").

Because Monson did not meet her burden to show she has standing to sue, the Court should decline to reach Defendants' Rule 12(b)(6) arguments for dismissal on the merits.  Instead, this case should be dismissed under Rule 12(b)(1) without prejudice for lack of jurisdiction.  *See Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 468 (5th Cir. 2020) (dismissal for lack of standing is without prejudice).  And given the Court's lack of jurisdiction, Plaintiffs' separate motion for leave to amend her complaint to add new defendants is denied as moot.  *See* Dkt. 39.

## <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Defendant Tort Network LLC d/b/a Velawcity's motion to dismiss (Dkt. 14) and Defendants McClenny, Moseley & Associates, PLLC, James McClenny, and John Zachary Moseley's joint motion to dismiss (Dkt. 25) be **GRANTED**.

Notably, Plaintiff Katherine Monson has already dismissed her claims against Defendant Apex Roof & Restoration, LLC.  Dkt. 31.  It is therefore further **RECOMMENDED** that this Court enter a separate final judgment under Fed. R. Civ. P. 58(a) that Plaintiff Katherine Monson's claims against

the remaining defendants be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.  Plaintiff's further motion for leave to amend her claims to add two more defendants (Dkt. 39) is **DENIED** as **MOOT**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on November 22, 2023, at Houston, TX.

Yvonne Y. Ho
United States Magistrate Judge