**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KATHERINE MONSON, individually and on behalf of all others similarly situated** | § § § § | |
| **Plaintiff,** | § § | **Civil Action No. 4:23-cv-00928** |
| **v.** | § § | |
| **MCCLENNY, MOSELEY & ASSOCIATES; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; TORT NETWORK, LLC; APEX ROOFING & RESTORATION, LLC** | § § § § § § | |
| **Defendants.** | § | |

### MONSON'S RESPONSE TO TORT NETWORK, LLC d/b/a VELAWCITY'S AND MCLENNY'S OBJECTIONS TO THE MAGISTRATE JUDGE'S AMENDED MEMORANDUM AND RECOMMENDATION (Rec. Doc. No. 46)

MAY IT PLEASE THE COURT:

Plaintiff, Katherine Monson, individually and on behalf of all others similarly situated

("Monson"), submits this response to Tort Network, LLC d/b/a Velawcity's ("Velawcity")

Objection to Magistrate's Amended Memorandum (Rec Doc. No. 48), and the Objection to

Memorandum and Recommendation (Rec Doc No. 49) submitted on behalf of Defendant James

McClenny ("McClenny") as follows:

### INTRODUCTION

The Magistrate Judge's Amended Memorandum and Recommendation (Rec. Doc. No.

46) effectively serves to place this entire matter on a new procedural path, one for which

Velawcity's challenges to subject matter jurisdiction and McClenny's effort to remove himself

personally from the litigation have been put to rest.  McClenny's seeking of an outright dismissal

is lacking on substantive grounds as the facts alleged in the proposed Amended and Restated Complaint (Rec Doc No. 41-2) set forth causes of action against McClenny for barratry under Texas law. As set forth in the Amended Complaint, McClenny participated in, and benefitted from, improper communications to putative class members in violation of the law.

Furthermore, despite Velawcity's effort to suggest that the speech that it conducted at the direction of McClenny, Moseley and Associates ("MMA") and its principals, including McClenny, somehow has been blessed by the United States Supreme Court, the simple reality is that the Supreme Court has never allowed unfettered commercial speech, much less when it involves lawyer advertising. While even the Velawcity cited cases themselves clearly recognize time, place, and manner restrictions on lawyer advertising, subsequent jurisprudence over the last 40 years has continually confirmed that states can place restrictions on lawyer advertising and still pass constitutional muster. Moreover, Velawcity's suggestion that its speech is permitted by the Supreme Court fails to fully address the actual reality of the statutory framework upon which this lawsuit is based. Velawcity's marketing on behalf of MMA and its principals, is not the traditional regular mail-based solicitations that were subject of those early Supreme Court cases, but rather involves technological advances that were not contemplated. Despite Velawcity's suggestion otherwise, the communications provided by Velawcity on behalf of MMA and its principals are in violation of specific Texas statutes and were received via a telephone, providing an interactivity that was not considered by *Shapero* and its progeny.

Velawcity's other arguments, as it relates to standing, and more particularly injury-in-fact are likewise unavailing. For standing purposes, the analysis performed is whether the claims being made are of the nature that are typically recognized as redressable, not whether a state has specified

that the exact elements of a particular cause of action are recognized.  Rather, in the present case, the causes of action provided in this case are found in the Texas barratry statutes.  The question for standing is whether the injury-in-fact element exists under a much broader concept of whether such types of injuries are traditionally redressable in tort.

Velawcity also expends a significant amount of argument suggesting that Plaintiff has not used the word "conspiracy" in its pleadings.  However, Plaintiff is not required to do so, especially given the allegations in this case, which are not in dispute, that the MMA and its principals entered into actual contracts with Velawcity to participate in the improper solicitation.  More often than not, a conspiracy is not documented on paper.  In this case it is.  Therefore, Velawcity's contortions to remove itself from the scope of the barratry statutes is not supported by the alleged facts.

Accordingly, the Magistrate Judge's Memorandum and Recommendation should be approved, and an Order issued granting leave for Plaintiff to file her Amended and Restated Complaint.  Additionally, as suggested, the matter can proceed forward relative to the class action allegations.[1]

## **PROCEDURAL STATUS**

Originally, the Magistrate Judge took up the following motions for consideration as reflected in the Memorandum and Recommendation (Rec. Doc. No. 40): Velawcity's Motion to Dismiss Complaint (Rec. Doc No. 14), Joint Motion to Dismiss Under Rule 12(b) and Joint Motion

---

[1] The Magistrate Judge does note in the Amended Memorandum and Recommendation that the deadline for filing a Motion for Class Certification provided for in the Docket Control Order (Rec Doc No. 37) had passed. However, because the original Memorandum and Recommendation had recommended dismissal of the entirety of the original Complaint without prejudice and was still under consideration by the District Court at the provided deadline for a motion for class certification, the Plaintiffs did not move for class certification given the procedural status of the case.  Plaintiffs intend to move for certification upon resolution of the issues being addressed at present.

to Strike Class Allegations (Rec. Doc No. 25) by MMA, John Zachary Moseley, and McClenny, along with Plaintiff's Motion for Leave to File Amended Complaint (Rec. Doc. No. 39). The Magistrate Judge concluded that Monson's original Complaint failed to establish subject matter jurisdiction on the grounds that a concrete injury had not been alleged, and recommended that the Complaint be dismissed without prejudice.[2] The Magistrate Judge, having concluded subject matter jurisdiction was lacking, did not make any recommendations about either Velawcity's or MMA and its principals' 12(b)(6) motions, or the motion to strike class allegations.

In response to the original Memorandum and Recommendation, Plaintiff filed an Objection to Magistrate Judge's November 23, 2023 Memorandum and Recommendation (Rec. Doc. No. 41). As part of her objection, Monson submitted a revised First Amended and Restated Complaint For Class Action and Damages.[3] Velawcity filed a Response to the Objections (Rec Doc No. 44). In response, Monson filed a Motion for Leave to File a Reply Memorandum in Support of its Objections to the Magistrate Judge's Memorandum and Recommendation (Rec. Doc No. 45).

Subsequently, the Magistrate Judge issued an Amended Memorandum and Recommendation (Rec. Doc. No. 46), concluding that leave should be granted to allow the filing of Monson's revised First Amended and Restated Complaint For Class Action and Damages, on the grounds that federal procedural law freely provides leave to amend defective subject matter jurisdiction allegations.[4] Furthermore, the motions to dismiss of Velawcity and MMA and its principals were denied, along with the motions to strike class allegations. In response thereto,

---

[2] See Rec Doc No. 40, pg. 10-11. The Magistrate Judge also recommended that Plaintiff's Motion for Leave to File an Amended Complaint be denied as moot.
[3] Rec Doc No. 41-2.
[4] See Amended Memorandum and Recommendation (Rec Doc. 46), pp. 2 and 27.

Velawcity and McClenny separately filed objections to the Amended Memorandum and Recommendation.[5]

## **LAW AND ARGUMENT**

The Magistrate Judge's Amended Memorandum and Recommendation has recommended that Monson be granted leave to file the revised First Amended and Restated Complaint For Class Action and Damages. Additionally, the Magistrate Judge has recommended that the motions to dismiss of the defendants on both subject matter jurisdiction and no cause of action be denied. Finally, the Magistrate Judge has recommended the denial of motions to strike class allegations, subject to refiling and briefing on the class allegations. For the reasons articulated by the Magistrate Judge and for those set out below, the Magistrate Judge's Memorandum and Recommendation should be accepted.[6]

While Velawcity and McClenny have asserted some new arguments in their latest filings, many of the issues raised previously had been addressed by the parties in relation to briefing on the motions to dismiss and the subsequent objections and responses to the original Memorandum and Recommendation. As the Court will be undertaking a de novo review[7] of all the issues subject of the Magistrate Judge's Amended Memorandum and Recommendation, Monson will attempt to avoid being overly repetitive of issues that have already been extensively briefed.

---

[5] Rec Doc No. 48 and Rec Doc No. 49, respectively.
[6] Despite having originally filed a motion to dismiss, MMA and John Zachary Moseley have not filed any objections to the Magistrate Judge's Amended Memorandum and Recommendation.
[7] "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 USC 636(b)(1)(C).

A.    **Plaintiff Has Established An Injury-In-Fact, And Thus Subject Matter Jurisdiction**

Velawcity takes a multi-faceted approach to challenging the Magistrate Judge's conclusion finding subject matter jurisdiction.  First, Velawcity claims constitutional protections that are largely irrelevant for the analysis of the subject matter jurisdiction issue.  Second, Velawcity misapplies the test related to injury in fact in multiple ways by suggesting that the allegations of the complaint do not properly link it to the injury in fact as Velawcity could not possibly be subject to Texas law.[8]  As provided by the Magistrate Judge, subject matter jurisdiction does exist as an injury-in-fact has been alleged that is linked to both Velawcity and McClenny.

### 1.    Velawcity's Free Speech Claims Are Not Dispositive

While Monson can agree the First Amendment has an important role in regulating a state's authority to dictate what information an attorney may convey in soliciting legal business, Velawcity relies on general propositions set forth in 40-year-old cases that are not germane to the actual type of communications at issue in this case. Neither *Zauderer* nor *Shapero* made mention of nor could predict the exponential growth of technological advances and how these advances would impact commercial advertising and affect consumers. The intent is clear, however, that regulators are able to make laws that prohibit the dissemination of commercial speech that is false, deceptive, or misleading. *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 638, 105 S. Ct. 2265, 2275, 85 L. Ed. 2d 652 (1985).  Texas lawyers and their agents, like Velawcity, do not have First Amendment rights to commit unlawful solicitation. See *O'Quinn v. State Bar of Tex.*,

---

[8] McClenny has adopted Velawcity's subject matter jurisdiction arguments.  See Objection to the Memorandum and Recommendation, Rec. Doc. No. 49, p. 4.  For purposes of this brief Monson's references to arguments made by Velawcity apply equally to those same arguments adopted by McClenny.  However, given the fact that McClenny is a Texas attorney, much of Velawcity's argument on injury in fact likely does not apply McClenny.

763 S.W.2d 397, 403 (Tex. 1988) (declining to hold that "the right of free speech under the Texas Constitution guarantees a lawyer the right to solicit business for pecuniary gain"); *Barbee v. State*, 432 S.W.2d 78, 85 (Tex. Crim. App. 1968), cert. denied, 395 U.S. 924 (1969) (rejecting the contention that the Texas criminal barratry statute "is unconstitutional because it imposes a limitation on the right of free speech.").

It is misguided for Velawcity to imply that *Shapero* and *Zauderer* contemplated technological advances in marketing tactics resulting in the Defendants' suggestion that text messages and emails are automatically protected speech."[9] The focus of this First Amendment protection lies in the truthful and nondeceptive nature of the communication, for which Velawcity does not address. More particularly to the facts and circumstances of this case, as discussed by the Magistrate Judge, some of the Texas barratry statutes recognize the technological advances in communication and specifically regulate those types of communications.[10]

Furthermore, courts may take measures to prevent deception and confusion even if the speech is not inherently misleading but only potentially misleading. See *Gonzalez v. State Bar of Tex.*, 904 S.W.2d 823, 829 (Tex.App.-San Antonio 1995, writ denied). *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 918 (Tex. App. 2006). Misleading commercial speech receives no First Amendment protection. See *Hudson*, 447 U.S. at 563, 100 S.Ct. at 2350 (stating, "government may ban forms of communication more likely to deceive the public than to inform

---

[9] Rec Doc No. 48 at p 7.
[10] See Amended Memorandum and Recommendation, Rec Doc No. 46, pp. 8-11 and 15-17.

it."). Therefore, "the government may freely regulate commercial speech that ... is misleading."
*Went For It*, 515 U.S. at 623–24, 115 S. Ct. at 2376.[11]

Outside of the barratry rules themselves, Rule 7.02 of the Disciplinary Rules states the following: (a) A lawyer shall not make or sponsor a false or misleading communication about the qualifications of any lawyer or firm. A communication is false or misleading if it: (1) ... omits a fact necessary to make the statement considered as a whole not materially misleading[.]

Thus, an omission may be materially misleading commercial speech subject to free regulation by the government. See *Comm'n for Lawyer Discipline v. C.R.*, 54 S.W.3d 506, 516 (Tex.App.-Fort Worth 2001, pet. denied). "Whatever means are used to make known a lawyer's services, statements about them should be truthful and nondeceptive. Sub-paragraph (a)(1) [of rule 7.02] recognizes that statements can be misleading both by what they contain and by what they leave out. Statements that are false or misleading for either reason are prohibited." TEX. DISCIPLINARY R. PROF. CONDUCT 7.02 cmt. 2, 3. *Neely v. Comm'n For Law. Discipline*, 196 S.W.3d 174, 182–83 (Tex. App. 2006). When the message conveyed by the communication suggests that the lawyer's professional services are available for hire, then the communication is

---

[11]Velawcity's reliance on cases involving mere "advertising" is misplaced because in-person solicitation (as opposed to printed advertisement) is subject to a "lower level of judicial scrutiny of the restrictive legislation." *O'Quinn*, 763 S.W.2d at 400. The United States Supreme Court has noted the distinction:

> in-person solicitation of professional employment by a lawyer does not stand on a par with truthful advertising about the availability and terms of routine legal services, let alone with forms of speech more traditionally within the concern of the First Amendment.

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455 (1978). "Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection." *Id*. at 457. "While entitled to some constitutional protection, [that] conduct is subject to regulation in furtherance of important state interests." *Id*. at 460, [distinguishing *Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977)].

commercial speech that must meet the requirements of Part VII. *Neely v. Comm'n For Law. Discipline*, 196 S.W.3d 174, 182 (Tex. App. 2006)

A notice or advertisement regarding qualifications or services of a lawyer or firm is inherently misleading when it omits information regarding the identity of the lawyer or firm and is not susceptible to reasonable verification by the public. See *Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 612–13 (Tex. App.-Fort Worth 2004, pet. denied). *Neely v. Comm'n For Law. Discipline*, 196 S.W.3d 174, 183 (Tex. App. 2006). Despite any additional limitations that may be placed on attorney advertisement by the state of Texas and regardless of the medium of that communication, a constitutional blanket is not placed over all attorney advertisement. The Complaint alleges that the type of communication that Velawcity prepared and disseminated for MMA and its principals were misleading and did not comply with the necessary requirements. Thus, it is not constitutionally protected speech.

### 2. An Injury In Fact Has Been Pleaded Against All Defendants, Including Velawcity and McClenny

The communications onslaught as it relates to Monson commenced on July 17, 2022 when an unsolicited text message was sent by Velawcity without any indication it was being directed by or for the benefit of MMA and its principals, referencing monetary benefits as a result of Hurricane Ida.[12] Monson used the link in the unsolicited text message and was directed to a website that likewise did not identify the MMA or its principals, and she was asked to respond to a series of questions.[13] It was not until Plaintiff clicked on a link related to the entreaty "See If I Qualify" that

---

[12] See First Amended and Restated Complaint for Class Action, Injunctive Relief and Damages (Rec Doc. 41-2), ¶¶ 19-22. Because the Magistrate Judge has recommended granting the motion to leave to file an amended complaint, Monson will refer to that proposed pleading.
[13] Id. at ¶¶ 23-31.

she first became aware that MMA and its principals were involved and that it was a solicitation for legal representation.[14] At that point, it was too late, and as chronicled in the Complaint, Velawcity, on behalf of MMA and its principals began a communication onslaught that by its very nature clearly demonstrated a violation of privacy and intrusion upon seclusion.

Significantly, multiple unsolicited phone calls from Velawcity personnel were made to Monson seeking to pressure her to sign up with MMA and its principals.[15] In this modern day and age, such relentless solicitation clearly goes beyond mere annoyance to a much more sustained violation of traditional rights of privacy and seclusion that are often recognized as providing a redressable injury in fact such as the present case. Despite the injury from such violations being intangible, and less susceptible to quantification, such injuries nonetheless are recognized under the law and are real.

The Magistrate Judge recognized that the Restated and Amended Complaint did, in fact, reference such an injury in fact.[16] While acknowledging that no cases have been located applying an injury-in-fact analysis to the Texas barratry statute, the Magistrate Court referenced two cases

---

[14] Id. at ¶ 32.

[15] Id. at ¶¶ 34-35. While the Magistrate Judge has noted that emails may not necessarily be the type of communications sought to be protected by the Texas barratry statutes, nonetheless it is a remarkable to point out that Monson received an email everyday for 120 days in a row. Id. at ¶ 39.

[16] As set forth in her Objection to the original Memorandum and Recommendation, argues that *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342, 136 S. Ct. 1540, 1549, 194 L.Ed.2d 635 (2016), the US Supreme Court did recognize that potential ability to establish injury-in-fact simply based on the statutory cause of action, providing:

> the violation of a procedural right granted by a statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.

The Court went on to reference prior cases, noting:

> See *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25, 118 S. Ct. 1777, 141 L.Ed.2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L.Ed.2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). Id at 578 U.S. at 342, 136 S. Ct. 1549-50.

with alleged analogous facts.  The case involving multiple text messages, *Cranor v. 5 Star Nutrition*, 998 F.3d 686 (5ᵗʰ Cir. 2021), recognized that an injury-in-fact was pleaded, thus finding subject matter jurisdiction.  The less analogous case involved a single letter and did not find an injury-in-fact.

The standard for injury in fact requires an analysis as to whether the statutory violation that is being alleged is rooted in traditional torts.   In building upon the *Spokeo* case, the Supreme Court in *TransUnion v. Ramirez*, 504 U.S. _____, 141 S. Ct. 2190, 2204, 210 L. Ed.2d 568 (2021) noted "[v]arious intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion."[17]  Thus, the analysis of injury-in-fact should not be whether certain expressions of traditional torts are specifically recognized by a jurisdiction, but rather whether the allegations made evidence those traditional torts.

In the present case, Plaintiff has set forth a basis to conclude an injury-in-fact has occurred. Multiple cases have been analyzed under the injury-in-fact framework that are similar in nature to the claims asserted in this matter, as they are focused on consumer rights and statutory causes of action.  In those cases, the courts have recognized that the allegations made are of the nature such that they could set out traditional tort causes of action.

Recently, a federal district court was asked to address an injury in fact issue involving debt collection activities. *Vazzano v. Receivable Management Services*, 621 F.Supp.3d 700 (N.D. Texas – Dallas Div, 2022).  A defendant challenged the plaintiff's claim at summary judgment, arguing that

---

[17] Internal citations removed.

she had not demonstrated a concrete injury.  While recognizing that *TransUnion* had left open the question as to whether emotional harm was sufficient for the debt collection statutes at issue, the court noted that an injury-in-fact was sufficiently demonstrated by plaintiff based on her testimony that she felt harassed by the offending communications.  The court concluded that such harassment was similar to the intrusion upon seclusion harm recognized at common law.[18]  Significantly, the court noted that while referencing the standard for analysis of this issue, "in identifying a common law analogue for certain injuries, it is not necessary that an injury is an 'exact duplicate.'"[19]

The *Vazzano* court went on to reference multiple post-T*ransUnion* cases making similar assessments on circumstances where the alleged injury at issue was analogous to the concept of intrusion upon seclusion:

> Post-*TransUnion*, courts have answered this question "Yes." Courts have held that receiving an unwanted letter or unwanted phone call has a "close relationship" to the harm posed by an intrusive invasion of privacy. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) ("The harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy."); *Lupia*, 8 F.4th at 1191 ("Lupia suffered a similar harm [to intrusion upon seclusion] when Medicredit made an unwanted call and left her a voicemail about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications."); *Chapman v. Nat'l Health Plans & Benefits Agency, LLC,* 619 F.Supp.3d 788, 794-96 (E.D. Mich. Aug. 4, 2022); *Carter v. Capital Link Mgmt. LLC,* 614 F.Supp.3d 1038, 1050 n.9 (N.D. Ala. July 12, 2022); *Cross v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 193016, at \*7 (W.D. Ark. Jan. 20, 2022); *see also Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (suggesting in another context that unwanted messages present privacy harms); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020); *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357-58 (3d Cir. 2018).

---

[18] Id. at 708.
[19] Id. at 707.

Other examples were also found before *TransUnion*.  In *Cunningham v. Rapid Response Monitoring Services, Inc.* 251 F.Supp.3d 1187 (M.D. Tenn – Nashville Div, 2017), a plaintiff bringing suit under the Telephone Consumer Protection Act (TCPA), 47 U.S.C.A. § 227, suffered a concrete and particularized injury to bring a private cause of action under the TCPA, arising from allegedly unwanted telemarketing of home security systems.  In concluding that Congress created a private cause of action under the TCPA to address the nuisance and an intrusive invasion of privacy represented by unwanted telemarketing,[20] the Court noted "in response to the voices of the very people whom the TCPA is drafted to protect, concluded that the real injuries associated with unwanted telemarketing were sufficient to support a cause of action."[21]

Not unlike the present case, where the Texas legislature recognized that barratry could be discouraged by providing private citizens a cause of action to fight against improper solicitations in the present case.  The rationale for allowing similar claims as provided by the TCPA is equally applicable here.  This is particularly true in this case, wherein Plaintiff was subjected to unsolicited texts and telephone calls.

A recent case out of Missouri, also illustrates the conclusion that a concrete particularized injury arising from a dispute involving the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. § 1692 et seq., exists  based in part upon the well-established tort of intrusion upon seclusion.[22]  In *Denmon*, a consumer brought a claim against a debt collector upon an interaction where the consumer disputed a listed debt on a credit report and asked not to be contacted.  In response, the debt collector wrote a single letter, which the consumer alleged in a subsequent

---

[20] Citing to *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372, 132 S. Ct. 740, 181 L.Ed.2d 881 (2012), *Cunningham* 251 F.Supp.3d at 1193
[21] *Cunningham* 251 F.Supp.3d at 1194
[22] *Denmon v. Kansas Counselors, Inc.* 2023 W.L. 2447471 (W.D. MO – Western Div. 2023)

lawsuit was a violation of §1692(c) of the FDCPA, prohibiting contact by a debt collector after the debtor refuses in writing to pay the debt.   The court agreed with the consumer that her claims were closely related to the tort of invasion of privacy and seclusion even though such violation was based upon a single letter.

In the present case, it is apparent that the intangible injuries that occur as a result of intrusive and systematic unwanted communications can be a basis for a traditional tort recovery. The Texas legislature, nonetheless, provides some teeth to provide those enduring unwanted and unethical solicitations with the clear ability to make the claim for improper attorney solicitation and to remove unscrupulous solicitors' ability to challenge the level of damage by proscribing a statutory cost to improper solicitation.  The fact that such costs are sought and allowed does not negate that a concrete and particularized injury occurred to Monson.   The multitude of communications as set forth in the Complaint articulates a concrete and particularized injury.

### 3.   Velawcity Cannot Avoid the Application of Texas Law

Taking another tact, Velawcity seeks to distance itself from the communications it contracted to provide for the benefit of its Texas clients by suggesting that somehow the agency relationship it undertook to solicit business for its clients removed it from the application of Texas barratry law.  This simply is not correct.

In seeking to avoid the application of Texas law, Velawcity cites to cases that do not involve the Texas barratry statutes that are in question here.  Velawcity further seeks dismissal on the argument that Texas barratry claims cannot apply to a scheme targeting Louisiana residents. However, this Court need not address whether the Texas barratry claims apply extraterritorially, as it is apparent that because the scheme was hatched by Texas lawyers and the offending actions

were planned and directed for the benefit of Texas lawyers, and Velawcity agreed to act as the agent for those Texas lawyers in the solicitation of potential clients, the claims are based in Texas and Texas barratry laws apply.

In a case with a similar fact pattern, a Texas appeals court reversed a summary judgment finding that because the attorneys involved in a case running scheme for Louisiana and Arkansas plaintiffs in two separate auto accident cases were Texas lawyers, licensed by the Texas Bar, and whom directed the scheme from their Texas offices, including knowingly financing solicitation and knowingly accepting employment as the result of the solicitation, the law of the state of Texas applied to the barratry claims. *Cheatham v. Pohl,* 2022 WL 3720139, *8 (Tx. Ct. App. Houston, 1st Cir. 2022).[23]  The Texas appeals court acknowledged that it was the first to be asked to consider whether Texas barratry statutes applied extraterritorially, but ultimately declined to undertake the analysis as the evidence presented established the scheme was run from Texas for the benefit of Texas attorneys.

Monson alleges that Velawcity entered into several Marketing Service Agreements wherein Velawcity agreed to act as MMA's agent in procuring clients for MMA.[24]  Furthermore, MMA agreed to pay Velawcity a set amount per "pre-screened potential client" that was "delivered" to MMA.[25] Significantly, Velawcity was paid more than $13 million for these clients.[26] Monson's direct contact with Velawcity on behalf of MMA and its principals consisted of unsolicited text messages and telephone calls, as well as an "intake" completed with a Velawcity

---

[23] Petitions for Review have been filed with the Texas Supreme Court,
[24] See First Amended and Restated Complaint for Class Action, Injunctive Relief and Damages (Rec Doc. 41-2), ¶¶ 10-11.
[25] Id. at ¶ 12.
[26] Id. at ¶ 13.

"representative".[27]  Monson also alleged that Velawcity does business in Texas and for the benefit of principals [MMA] in the State of Texas.[28]  Monson further alleges "MMA, and its principals, knowingly compensated Velawcity for its performance of barratry and solicitation of employment for MMA's economic benefit in violation of Texas law."[29]  These allegations are sufficient to establish that Velawcity is subject to Texas law.

More particularly, as it relates to Velawcity, it should find no solace in any claim that because it was only improperly soliciting Louisiana residents, it is not subject to the Texas law.  In analyzing that same argument in *Cheatham*, the Texas appeals court concluded that because the Texas Penal Code, Section 1.04, permits criminal liability to attach when part of relevant events occur out of state, such as the conspiratorial conduct of the case runners in furtherance of a conspiracy that occurs within the state of Texas, the case runners were also subject to potential criminal liability under §82.0651.  *Id.* at 2022 WL 3720139, *9.

Likewise, in the present case, Velawcity's action directed at Louisiana residents is in furtherance of a contractually agreed to conspiracy to commit the barratry violations in the state of Texas.  Velawcity's misrepresentation of this issue as it was addressed in *Cheatham* is simply unavailing.

Additionally, the suggestion that facts have not been alleged stating a claim that Monson was a person who was solicited by conduct violating Texas Disciplinary Rules of Professional Conduct 7.03 or Tex. Penal Code section 38.12, flies in the face of the first 57 paragraphs of the Complaint.  Monson was systematically and repeatedly solicited by a barrage of communications

---

[27] Id. at ¶¶ 17-30, 32, 34, 35-39.
[28] Id. at ¶41-42.
[29] Id. at ¶57

directed by Velawcity seeking to pressure Monson to sign up for legal services with a Texas law firm.  Amply demonstrating a conspiracy for Section 1.04 purposes, as such solicitation was in violation of both 7.03 and 38.12, thus making Velawcity liable under Tex. Gov't Code §82.0651. The allegations of contractual agreements are more than sufficient to address the concerns raised by Velawcity that its alleged out of state conduct does not fall under the ambit of the Texas penal code.

Additionally, Velawcity seeks to avoid the fact that an injury in fact has been alleged by suggesting Texas law does not recognize a cause of action for right to privacy unless a physical invasion has occurred.[30]  As addressed above, the requirement that a particular state specifically recognizes a particular cause of action is not necessary for federal subject matter standing. Nonetheless, Velawcity does not fully recognize the state of the law in Texas on this point.  As provided for by the Texas Supreme Court in *Valenzuela v. Aquino*, 853 S.W.2d 512 (Tx 1993), the cause of action for invasion of privacy in Texas follows the Restatement (Second) of Torts §652B (1977), which provides:

> One who intentionally intrudes, physically **or otherwise**, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.[31]

While the cases Velawcity cited might suggest that under Texas law a physical invasion is required, a broader reading of the cause of action under Texas law provides that the unsolicited communications described in the Complaint could easily serve as an "otherwise invasion" of the solitude or seclusion of another.  As such Velawcity's actions on behalf of the MMA and its

---

[30] See Velawcity Memo In Opposition p. 9-10, (Rec. Doc. No. 44).
[31] Id. at 513 (emphasis added).

principals should be considered an invasion of privacy under Texas law, although for subject matter jurisdiction purposes it does not require this element.

In conclusion, none of the arguments made by Velawcity in its objection to the Magistrate Judge's recommendations fail to prevent the conclusion that subject matter jurisdiction has been established.

### B.    Monson Has Stated A Claim Against McClenny

The standard for assessing whether a complaint can withstand a challenge under FRCP 12(b)(6) was recently summed up the Fifth Circuit as follows:

> To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court accepts well-pled facts as true and "view[s] them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

*Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022).  Given the liberal standard applied at this point in the litigation, it is evident that Monson has stated a claim upon which relief can be granted as to McClenny.

McClenny a named-partner in MMA has separately objected to the Magistrate's Memorandum and Recommendation denying the 12(b)(6) motion he was part of along with his former partner and their firm.  McClenny has struck out on his own, ironically claiming that his former partner and co-defendant Moseley was the one conducting the barratry.[32]  However, at the motion to dismiss stage, this Court should not rely upon an unsupported statement contained within a party's objection to a Magistrate Judge recommendation.  The Complaint is detailed in

---

[32] See Objection to the Memorandum and Recommendation (Rec. Doc No. 49). p. 4

regard to the actions of all defendants, including McClenny. McClenny simply is choosing to disregard all of those facts, in suggesting that he somehow had nothing to do with this operation. We will direct the court's attention to paragraphs 10 through 57 of the First Restated and Amended Complaint for Class Action and Damages that clearly allege claims for which McClenny should respond.[33] In particular paragraph 42 clearly encompasses preceding paragraphs 10-41 and states, "All of these communications were sent by Velawcity at the direction of and for the benefit of, William [sic] McClenny[34] and John Zachary Moseley…".[35] Likewise, paragraph 57 alleges "MMA, and its principals, knowingly compensated Velawcity for its performance of barratry and solicitation of employment for MMA's economic benefit in violation of Texas law."[36]

McClenny attempts to compare his situation to far more complex cases such as *Hood v. Gulf Capital Bank* that included nearly 20 named defendants including 7 distinct entities and 11 individuals are unavailing. Such cases are not analogous to the present case involving the alleged violation of barratry by attorneys. McClenny is a named-partner in a law firm, not some person with limited involvement. He literally had his name on the door. The facts alleged in the Complaint place him within the group of persons benefiting from this scheme. The present case does not raise any confusion surrounding which allegations are directed toward Defendant McClenny; the allegations clearly include him.

### C. Plaintiff Has Properly Alleged A Class Action

Finally, Velawcity challenges Monson's ability to maintain a class action at the pleadings

---

[33] Rec Doc No. 41-2
[34] Monson notes that a wrong first name of Defendant McClenny was used in the cited paragraph, however, the person named as a defendant in this matter is James McClenny. See Restated and Amended Complaint for Class Action and Damages, Rec Doc. No. 41-2, ¶42(2)(B).
[35] Id. at ¶42.
[36] Id. at ¶57.

stage.  Monson has provided sufficient allegations to allow consideration of the potential class

action status to move forward.

Nonetheless, Monson recognizes that the Magistrate Judge has recommended that a full

briefing of the class allegations be reserved for another day.  Accordingly, Monson will move

forward separately on those issues.

<div style="margin-left:40%">

Respectfully Submitted:

*/s/Jonathan P. Lemann*
Jonathan P. Lemann
Attorney-in-Charge
Texas Bar No. #24054333
Southern District of Texas Bar No. #1012895
lemannjp@couhigpartners.com
Robert E. Couhig, Jr. (Texas Bar #4877400)
Southern District of Texas Bar #432674
couhigre@couhigpartnser.com
**COUHIG PARTNERS, LLC**
3250 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
(504) 588-1288
(504) 588-9750 *fax*

AND

Ron A. Austin
Bar Roll No. 23630
Ron Austin Law
400 Manhattan Blvd.
Harvey, LA 70058
(504) 227-8100
raustin@ronaustinlaw.com

*Attorneys for Plaintiff*

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 22nd day of March, 2024, the foregoing document was filed with the Court via the Court's CM/ECF system and served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

<div align="right">

*/s/Jonathan P. Lemann*
Jonathan P. Lemann

</div>