**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KATHERINE MONSON, individually** | § | |
| **and on behalf of others similarly situated** | § | |
| | § | |
|     *Plaintiff,* | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO: 4:23-cv-00928** |
| **MCCLENNY, MOSELEY &** | § | |
| **ASSOCIATES, PLLC; JAMES** | § | |
| **MCCLENNY; JOHN ZACHARY** | § | |
| **MOSELEY; TORT NETWORK, LLC;** | § | |
| **AND APEX ROOFING AND** | § | |
| **RESTORATION, LLC** | § | |
| | § | |
|     *Defendants.* | § | |

## DEFENDANT TORT NETWORK, LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED AND RESTATED COMPLAINT FOR CLASS ACTION AND DAMAGES

Defendant Tort Network, LLC d/b/a Velawcity ("Velawcity" or "Defendant") files its Answer to Plaintiff's First Amended and Restated Complaint for Class Action and Damages.

# I.
# PARTIES

1.    Named as Plaintiff in this Complaint is:

    A.    Katherine Monson, a person of the full age of majority domiciled in and a citizen of Covington, Louisiana;

RESPONSE: Defendant lacks adequate information to admit or deny.

2.    The following parties are made Defendants:

    A.    McClenny Moseley & Associates, PLLC, a Texas Professional Limited Liability Company engaged in the practice of law, with a principal business office in Houston, Texas (referred to in this Complaint as "MMA");

RESPONSE: Defendant lacks adequate information to admit or deny.

      B.     James McClenny, a person of the full age of majority domiciled in and a citizen of Texas, who is presently licensed to practice law in the State of Texas, and at all pertinent times was engaged in the practice of law;

RESPONSE: Defendant lacks adequate information to admit or deny.

      C.     John Zachary Moseley, a person of the full age of majority domiciled in and a citizen of Texas, who is presently licensed to practice law in the State of Texas, and at all pertinent times was engaged in the practice of law;

RESPONSE: Defendant lacks adequate information to admit or deny.

      D.     Tort Network, LLC, an Arizona Limited Liability Company that, upon information and belief, is doing business in Texas under the trade name "Velawcity" (referred to in this Complaint as "Velawcity"), and whose members are not citizens of Louisiana;

RESPONSE: Admit that Tort Network, LLC is an Arizona Limited Liability Company doing business under the trade name "Velawcity" but denies it is doing business in Texas. Admit that no member is a citizen of Louisiana.

      E.     Equal Access Justice Fund LP, a limited partnership formed under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware; and

RESPONSE: Defendant lacks adequate information to admit or deny.

      F.     EAJF ESQ Fund LP, a limited partnership formed under the laws of the State of Delaware with its principal place of business in Wilmington Delaware. (Equal Access Justice Fund LP and EAJF ESQ Fund LP, will hereafter collectively be referred to as "Equal Access Defendants.")

RESPONSE: Defendant lacks adequate information to admit or deny.

**II.**
**JURISDICTION AND VENUE**

3.       This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

RESPONSE: Defendant denies that the Complaint adequately pleads a class action and further denies the Plaintiff is entitled to damages in excess of $5,000,000.00.

4.       Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth above, Plaintiff is a citizen of Louisiana, and the individual Defendants are citizens of Texas and the limited liability company. Defendants are upon information and belief citizens of Texas and Arizona, and the limited partnership defendants are upon information and belief citizens of Delaware and Florida, and otherwise not of Louisiana. Therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges upon information and belief that more than two-thirds of all the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than Texas, where this action was originally filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

RESPONSE: Defendant admits that one member is a citizen of Arizona. Otherwise, Defendant lacks adequate information to admit or deny.

5.       As alleged in this Complaint, Defendants' unlawful acts of barratry originated in this judicial district. All Defendants are subject to this Court's personal jurisdiction with respect

to this action, and accordingly, venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(1) and (2).

RESPONSE: Deny.

### III.
### BACKGROUND

6.      On August 27, 2020, Hurricane Laura made landfall near Cameron, Louisiana as a Category 4 hurricane, causing catastrophic damage across Southwest Louisiana. Shortly thereafter, on October 9, 2020, the recovery efforts from Laura were hindered when Hurricane Delta made landfall as a Category 2 hurricane just fifteen (15) miles east of where Laura made landfall. Hurricane Zeta, a Category 3 hurricane, made landfall in Terrebonne Parish just nineteen (19) days later on October 28, 2020. The year 2021 was no kinder to the residents of Louisiana, as Hurricane Ida made landfall as a Category 4 hurricane in Lafourche Parish and caused billions in damages across the state.

RESPONSE: Admit.

7.      The fallout from these hurricanes, all of which occurred as the country was still in the throes of a global pandemic, was tremendous. Property owners were faced with massive damage to their residences and a shortage of contractors available to repair the damages. Insurers were inundated with thousands of property damage claims – some folded and others pulled out of Louisiana entirely.

RESPONSE: Admit.

8.      In the wake of these hurricanes, when residents and property owners throughout Louisiana and elsewhere were at their most vulnerable, Defendants took unfair advantage to enrich themselves. The actions taken by Defendants outlined in this Complaint represent a pattern and practice of improper behavior that violates the Texas barratry laws.

RESPONSE: Deny.

9.      MMA entered into agreements or otherwise conspired with Velawcity, Equal Access Defendants, and likely other entities presently unknown to provide unlawful and improper acts of barratry.

RESPONSE: Deny.

## IV.
## FACTUAL ALLEGATIONS

### *The Velawcity Scheme*

10.      MMA and Velawcity entered into several "Marketing Service Agreements" on December 8, 2021, February 5, 2022, May 5, 2022, May 23, 2022, and August 2, 2022 ("MSA" or "MSAs").

RESPONSE: Admit.

11.      In these MSAs, Velawcity stated that it would be acting as an agent of MMA to reach out to potential clients on MMA's behalf and provide potential clients with MMA's engagement letter.

RESPONSE: Denied except to the extent Velawcity is an agent of MMA for providing administrative, intake, and marketing services pursuant to the MSA's.

12.      MMA agreed in these MSAs to pay Velawcity a set amount per "pre-screened potential client" that was "delivered" to MMA.

RESPONSE: Admit that MMA agreed to pay Defendant a set amount per "pre-screened potential client reviewed for [MMA] and delivered to [MMA]," for Defendant to perform administrative, intake, and marketing services, otherwise denied.

13.      In total, through these MSAs, MMA paid Velawcity in advance a minimum of $13,938,000 for at least 4,628 clients.

RESPONSE: Admit that MMA paid Velawcity a minimum of $13,938,000 to provide administrative, intake, and marketing services for at least 4,628 clients.

14.     These MSAs were executed by Velawcity and MMA in Texas.

RESPONSE: Deny.

15.     To deliver on its obligations under these MSAs, Velawcity sent out unsolicited communications to thousands of individuals, including Plaintiff, via text message and other means, that the recipient has a hurricane storm damage claim pending.

RESPONSE: Deny.

16.     These communications contained a link to a form and stated that the form needed to be filled out in order to claim compensation. Some of these communications even contained specific instructions for how the recipient should answer the questions on the form.

RESPONSE: Deny.

17.     These communications did not contain the word "ADVERTISEMENT" or in any other way indicate that they were advertising material for MMA or MMA's services.

RESPONSE: Deny.

18.     Plaintiff received one such unsolicited communication in the form of a text message to her cell phone.

RESPONSE: Deny.

19.     At approximately 7:01 a.m. on Sunday, July 17, 2022, Plaintiff received an unsolicited text message from a number identified as "+14307032100".

RESPONSE: Deny.

20.     The unsolicited text message stated as follows:

        You qualify for Hurricane Ida owed claim_$$$! Pick Yes to the first 3

        questions and NO for attorney to claim...D7.tap622.com St

RESPONSE: Deny.

21.     Upon receipt of this text message, Ms. Monson was confused as she was not familiar with the phone number that texted her.

RESPONSE:  Defendant lacks sufficient information to admit or deny.

22.     The unsolicited text message did not identify the sender and did not identify any lawyer or law firm. There was no location of practice identified, nor was there any state Bar Association Lawyer Advertising Filing Number supplied. Rather there was a promise of money made if certain answers were provided at the website that was enabled by the link "D7.tap622.com

RESPONSE: Deny.

23.     Plaintiff   clicked   on   the   link,   which   sent   her   directly   to   a   website www.DisasterClaimHelp.com. On the first page of this website, again, there is no mention of a law firm name or attorney involved.

RESPONSE: Defendant lacks sufficient information to admit or deny.

24.     Rather, there is a series of questions presented to the viewer and is listed as a series of "Steps".

RESPONSE: Defendant lacks sufficient information to admit or deny.

25.     Step 1 asks: "Did you suffer damage to your home or business (even minimal damage) from a hurricane? Clicking "YES" to Step 1 as instructed by the text message brings you to the second step.

RESPONSE: Defendant lacks sufficient information to admit or deny.

26.     Step 2 asks: "Did you own your home or business? Clicking "YES" to Step 2 as instructed by the text message brings you to the third step.

RESPONSE: Defendant lacks sufficient information to admit or deny.

27.     Step 3 asks: "Did you have homeowners insurance during the time of the incident?" Clicking "YES" to Step 3 as instructed by the text message brings you to the fourth step.

RESPONSE: Defendant lacks sufficient information to admit or deny.

28.     Step 4 asks: "In what state did the damage occur?" and provides the options of Louisiana, Mississippi, and Texas. Once the state is entered, then you are taken to the fifth step.

RESPONSE: Defendant lacks sufficient information to admit or deny.

29.     Step 5 instructs: "Briefly describe what happened." Since Hurricane Ida was the subject of the unsolicited text message, "Hurricane Ida" was mentioned. The website then takes you to the sixth step.

RESPONSE: Defendant lacks sufficient information to admit or deny.

30.     Step 6 asks: "Do you currently have an attorney for this claim?"

RESPONSE: Defendant lacks sufficient information to admit or deny.

31.     This is the first instance on the website that suggests that it is an attorney advertisement. Yet, no lawyers, law firms, or locations are identified. Clicking "No" as instructed takes you to the Final Step, in entering the user's contact information with a button entitled "SEE IF I QUALIFY".

RESPONSE: Defendant lacks sufficient information to admit or deny.

32.     Once the "SEE IF I QUALIFY" button was clicked, Plaintiff instantly received a second text message at 8:43 a.m. from phone number "+1(318) 536-6739". This text message states as follows:

Thank you for contacting McClenny Moseley & Associates. Our representatives will be calling you shortly about your Storm Damage claim. Reply STOP to optout.

RESPONSE: Admit.

33.     At no point in the entire process, either in the first text message or the website, was MMA or any of its attorneys subject to this complaint identified. Accordingly, the second text message is false and misleading as at no time did Plaintiff ever contact this law firm or any of its attorneys.

<u>RESPONSE:</u> Defendant denies that its message was false and misleading but otherwise lacks sufficient information to admit or deny this allegation.

34.     However, as promised, a few minutes later, on July 17, 2022, a "representative" of MMA called Plaintiff and attempted to have her sign an online retention agreement, which Plaintiff did not complete. The caller told Plaintiff the call was recorded and thus, the recording should be available from MMA.

<u>RESPONSE:</u> Admit.

35.     Upon noticing that Plaintiff did not execute a retention agreement, Plaintiff received another unsolicited phone call from MMA, which she did not answer, and a voicemail was left for her. The voicemail states as follows:

> Hello, this is McClenny Moseley & Associates. We're reaching out because you recently completed an intake with our representatives and were sent legal documents for review and signature. We're following up to help answer any questions or concerns you may have. Please note that these documents are time sensitive and the sooner we can process them to our legal team, the quicker your claim can proceed. Please call us back so we can help assist you with the completion of these documents at 833-991-1499. Thank you for your time and have a wonderful day.

<u>RESPONSE:</u> Admit that Plaintiff received a phone call and voicemail from MMA but deny it was unsolicited.

36.     On Monday, July 18, 2022, at 7:56 a.m., Plaintiff received another unsolicited text message stating:

> We recently emailed you documents to sign concerning your Storm Damage claim. Please call 856-681-4176 for questions or assistance.

<u>RESPONSE:</u> Defendant admits Velawcity sent the text message but denies it was unsolicited.

37.     Plaintiff has also received identical text messages on July 27, 2022 at 10:10 a.m., July30, 2022 at 10:12 a.m. and August 2, 2022 at 10:12 a.m., each stating:

> We're here to help you complete the document signing process concerning your Storm Damage claim. Call us anytime at 856-681-4176-McClenny Moseley.

RESPONSE: Defendant denies each text message was unsolicited but admits text messages were sent unless or until the individual requested to cease communications.

38.     MMA used the unsolicited text communications, telephone calls, emails, and the website www.DisasterClaimHelp.com to improperly solicit an attorney-client relationship with Plaintiff. At no point did Plaintiff have a family or lawyer-client relationship with any of these attorneys.

RESPONSE: Deny.

39.     The "intake" completed with a "representative" was undertaken by a company called Tort Network, LLC d/b/a Velawcity. Plaintiff also received over 120 emails from Velawcity, one each day, asking her to execute an Employment Contract. The Velawcity representatives sent contracts via email to Plaintiff on a daily basis from 8:54 a.m. on July 17, 2022 for at least 120 days in order to sign her up as a client for MMA.

RESPONSE: Defendant admits that e-mails were sent unless or until the individual requested to be taken off the e-mail list.

40.     The emails encouraged Plaintiff "to review and sign a document."

RESPONSE: Admit.

41.     All of these communications were sent by Velawcity, which actually does business in Texas and for the benefit of principals in the State of Texas.

RESPONSE: Deny.

42.     All of these communications were sent by Velawcity at the direction of, and for the benefit of, William McClenny and John Zachary Moseley, principals of MMA, both of

whom are attorneys licensed to practice and practicing in the State of Texas. Plaintiff had a constant bombardment of unwanted solicitations for 120 days, that injured her by invading her privacy and intruding upon her right of seclusion, including causing extreme annoyance and a virtual electronic nuisance.

RESPONSE: Defendant admits communications were sent by Velawcity on behalf of William McClenny and John Zachary Moseley, principals of MMA, who are attorneys licenses to practice in the state, but denies remaining allegations. Communications were sent unless or until the individual requested to cease communications.

43.     In some instances, individuals who clicked on the link were taken to a website that contained no mention of MMA, either in the web address or on the website itself, such as www.DisasterClaimHelp.com and www.HurricaneDamageLawsuit.com, two of the websites utilized by Defendants in this scheme.

RESPONSE: Deny.

44.     Velawcity also operated a call center pursuant to these MSAs, and through this call center reached out to potential clients seeking to obtain signed contracts for MMA's benefit.

RESPONSE: Velawcity admits that as a sub-contractor for MMA it operated a call center to facilitate MMA's communications with MMA's clients who signed retention agreements with MMA, but denies otherwise denies.

45.     Through this call center, Velawcity initiated telephone calls to individuals that submitted information to the websites set up by Velawcity, as well as to individuals whose information Velawcity obtained from other sources.

RESPONSE: Admit.

46.     On these phone calls, the non-lawyers at Velawcity would tell individuals that they were contacting the individuals "on behalf of the Velawcity law firm located in Texas" or some similar variation of that statement.

RESPONSE: Deny.

47.     While on the phone calls, the Velawcity representative caused an email to be sent to the individuals, instructing the individuals to open the email while they were still on the phone.

RESPONSE: Admit.

48.     Such emails stated:

> Thank you for your interest in the Hurricane / Storm Litigation. This email has been sent by the Intake Team Member you are speaking with. Please take a moment to review your agreement while you are on the call with us so we can answer any questions and get started on your case.
>
> Such emails also asked the recipient to click on a link in the email "to sign your Agreement."

RESPONSE: Admit.

49.     The Velawcity representatives encouraged the individuals to click on the link. When the link was clicked, a screen emerged indicating "Your document is ready to sign!"

RESPONSE: Admit.

50.     This electronic correspondence asked the individual to follow three simple steps in order to set up the signing mechanism for the agreement. The first step is to agree to sign with e-signature. The next step in the process instructs the reader "Draw your signature" and "Draw your initial."

RESPONSE: Admit.

51.     Once the individual clicks on the "Continue" button, the reader is provided with an MMA Attorney Employment Contract with instructions to "Click Here to Begin Signing". At no point in this process was anybody from MMA involved or identified.

RESPONSE: Deny.

52.     In fact, in at least one instance when the Velawcity representative was questioned, the representative denied having any knowledge of MMA and reaffirmed that he was acting on behalf of Velawcity.

RESPONSE: Deny.

53.     Individuals who did not sign this Agreement were then inundated with at least one email a day from Velawcity stating that their potential claim would "expire" in "[x number] days" unless they "act[ed] now" and signed the Agreement.

RESPONSE:  Defendant admits that emails were sent unless or until the individual requested to be taken off the email list.

54.     These emails did not contain the word "ADVERTISEMENT" or give any other indication that they were advertising material.

RESPONSE: Defendant admits the word advertisement was not contained in the e-mail but otherwise denies.

55.     Individuals also received a large number of follow-up text messages and phone calls from Velawcity, pressuring them to sign the Agreement.

RESPONSE:  Deny.

56.     Through the MSAs, MMA conspired and agreed with Velawcity to perform, and Velawcity did in fact perform, improper acts of barratry and solicitation of employment for the economic benefit of MMA in violation of Texas law.

RESPONSE:  Deny.

57.     MMA, and its principals, knowingly compensated Velawcity for its performance of barratry and solicitation of employment for MMA's economic benefit in violation of Texas law.

RESPONSE: Deny.

*Funding Source*

58.     In order to assist it in funding the Velawcity Scheme, MMA turned to the Equal Access Defendants.

RESPONSE: Deny.

59.     Defendant, Equal Access Justice Fund LP made loans to Defendant MMA, and other affiliated persons and entities, pursuant to an original loan agreement dated September 30, 2021, and a subsequent loan agreement dated March 10, 2022, for a total loan amount of $10 million for which the Equal Access Justice Fund LP expected to be repaid interest only for a period of time, but after the maturity date, MMA agreed to make mandatory payments on the 10th day after the end of each calendar month in an amount equal to 20% of MMA proceeds for such calendar month.

RESPONSE: Defendant lacks adequate information to admit or deny.

60.     Pursuant to an amendment to the subsequent loan agreement dated November 10, 2022, Equal Access Justice Fund LP loaned MMA and other affiliated persons and entities an additional $5 million under those same terms.

RESPONSE: Defendant lacks adequate information to admit or deny.

61.     Additionally, on or about June 10, 2022, MMA entered into a loan agreement with EAJF ESQ Fund LP, for an additional $10 million, tracking the same terms and payment obligations, requiring a percentage of MMA's monthly collections, as provided for in the loan agreements with Equal Access Justice Fund LP.

RESPONSE: Defendant lacks adequate information to admit or deny.

62.      In addition to the repayment obligations, the various loan agreements also entitled the Equal Access Defendants to liens for MMA's real property, personal property and fixtures.

RESPONSE: Defendant lacks adequate information to admit or deny.

63.     Upon information and belief the Equal Access Defendants have perfected a security interest in all accounts, income, receipts, revenue and other assets of MMA, thereby asserting liens on the contingent interest / attorneys' fees contractually agreed to and/or earned by MMA by virtue of their engagement and fee agreements with clients, resulting from, arising out of, or related to any lawsuits and client settlements to which MMA has obtained or could obtain from the Plaintiff and putative class members.

RESPONSE: Defendant lacks adequate information to admit or deny.

64.     Upon information and belief, the Equal Justice Defendants knew MMA would use the proceeds of the loans to fund the scheme described above.

RESPONSE: Defendant lacks adequate information to admit or deny.

65.     Upon information and belief, MMA has defaulted on its loan obligations and the Equal Access Defendants have instituted legal proceedings against MMA and other affiliated persons and entities as to those loan obligations.

RESPONSE: Defendant lacks adequate information to admit or deny.

66.     With the benefit of the funding sources from the Equal Justice Defendants and with the marketing efforts of Velawcity, MMA improperly solicited putative class members.

RESPONSE: Defendant lacks adequate information to admit or deny.

67.     While the exact number of these individuals that have been affected by these schemes is unknown at this point, Defendant Moseley stated in an interview previously that MMA represents approximately 15,000 clients in Louisiana who have hurricane damage claims. "Federal Judge DEMOLISHES McClenny and Moseley over 1600 Insurance Claims", https://www.youtube.com/watch?v=uHHeC2I-o40.

RESPONSE: Defendant lacks adequate information to admit or deny.

68.     For example, MMA filed over 1,600 lawsuits in the United States District Court for the Western District of Louisiana over the span of two days pertaining to hurricane damage claims, a large number of which were likely obtained from these deceptive schemes employed by Defendants. *See* March 3, 2023, Memorandum Order Suspending MMA from Practice in the Western District of Louisiana, attached to the original Complaint as Exhibit 1 (Rec. Doc. No. 12); Transcript of October 20, 2022, hearing in front of U.S. District Court Judge James D. Cain, attached to the original Complaint as Exhibit 2 (Rec. Doc. No. 1-3); Transcript of December 13, 2022; hearing in front of U.S. District Court Judge for the Western District of Louisiana James D. Cain, attached to the original Complaint as Exhibit 3 (Rec. Doc. No. 1-4).

RESPONSE: Defendant admits that 1,600 lawsuits were filed but denies that any deceptive scheme was employed by Defendant.

69.     In hearings in one of those cases, MMA also represented to the Court that they had an "extensive pre-suit mediation program" where they settled "thousands" of claims before they filed the 1,600-plus lawsuits in the Western District. *See* Exhibit 2 attached to original Complaint.

RESPONSE: Admit.

70.     Defendants actively concealed the actions alleged in this Complaint from the members of the Plaintiffs' Class, and it was not until October 2022 that these schemes, and the people affected by them, truly came to light.

RESPONSE: Deny.

### *Court and State Action Against MMA in Louisiana*

71.     In October 2022, U.S. District Court Judge James D. Cain, Jr., of the United States District Court for the Western District of Louisiana issued a stay of over 1,400 Hurricane Laura and Hurricane Delta lawsuits filed by MMA based on a finding by the judge that a large portion

of these filings were (1) made on behalf of plaintiffs that have already settled lawsuits; (2) were duplicate filings; (3) filed against insurers who did not issue a policy to the plaintiff; or (4) filings for damage to property that is outside the typical geographical area where reported damage was caused by Hurricanes Laura and Delta. *See* Exhibit 2 attached to original Complaint.

<u>RESPONSE:</u> Admit.

72.     One of the many practices of MMA over which Judge Cain expressed concern, in addition to the four outlined above, were the repeated efforts made by MMA to "mass mediate" a large number of these cases with the insurance companies. *See* Exhibit 1 attached to original Complaint.

<u>RESPONSE:</u> Admit.

73.     On February 17, 2023, the Louisiana Insurance Commissioner issued a Cease and Desist Order to MMA and its principals (the "LDI Order"). *See* February 17, 2023, Cease and Desist Order, attached to original Complaint as Exhibit 4 (Rec. Doc. No. 1-5).

<u>RESPONSE:</u> Admit.

74.     The LDI Order states that the Louisiana Department of Insurance "has evidence that [MMA and its principals] participated in a fraudulent scheme involving fraudulent insurance acts" relating to the contractual arrangement and actions of MMA. *See* Exhibit 4 attached to original Complaint.

<u>RESPONSE:</u> Admit.

75.     The LDI Order further declared the actions of MMA to be unfair trade practices under the Louisiana Insurance Code, specifically La. R.S. 22:1964(12) and (13). *See* Exhibit 4 attached to original Complaint.

<u>RESPONSE:</u> Admit.

76.     On March 2, 2023, the United States District Court for the Eastern District of Louisiana stayed over 600 Hurricane Ida cases filed by MMA pursuant to a recommendation from Chief Magistrate Judge Michael B. North. *See* March 2, 2023, Order, attached to original Complaint as Exhibit 5 (Rec. Doc. No. 1-6).

RESPONSE: Admit.

77.     Judge North's conclusion that these cases should be stayed was based on information that came to light in several hearings in front of Judge North regarding MMA's actions. *See* Transcript of February 1, 2023 Hearing, attached to the Original Complaint as Exhibit 6 (Rec. Doc. No. 1-7); *See* Transcript of February 22, 2023 Hearing, attached to the Original Complaint as Exhibit 7 (Rec. Doc. No. 1-8).

RESPONSE: Admit.

78.     MMA was suspended from practicing in the Western District of Louisiana on March 4, 2023, and one of the attorneys for MMA in Louisiana, H. William Huye, received an interim suspension from the practice of law shortly thereafter from the state Supreme Court.

RESPONSE: Admit.

79.     Upon information and belief, MMA concealed the involvement of the Equal Access Defendants in the marketing scheme, as it does not appear that MMA revealed that the $13 million reportedly paid to Velawcity was funded from loan proceeds provided by the Equal Justice Defendants.

RESPONSE: Defendant lacks adequate information to admit or deny.

## V.
## CLASS ACTION ALLEGATIONS

80.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each

of the preceding paragraphs of this Complaint.

RESPONSE: Paragraph does not require a response. Defendant incorporates prior responses to
preceding paragraphs.

81.     Plaintiff proposes bringing this matter as a class action against Defendants on the

issue of liability and damages.

RESPONSE: Defendant denies this matter should be brought as a class action.

82.     Plaintiff proposes to proceed on behalf of the following class of individuals:

> All persons who were solicited by the conduct of the Defendants that
> violates Section 38.12(a) or (b) of the Penal Code and/or Rule 7.03 of the
> Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas
> – thus making such solicitations unlawful barratry under TX GOVT §
> 82.0651 – in connection with potential storm or other hurricane damage
> claims from August 27, 2020 to present.

RESPONSE: Defendant denies this matter should be brought as a class action.

83.     Plaintiff reserves the right, with leave of Court if required, to amend the Class

definition if further investigation and discovery indicate that the Class definition should be

narrowed, expanded, or otherwise modified. Excluded from the Class of Plaintiffs are

governmental entities; the Defendants; any entity in which Defendants have a controlling

interest, their affiliates, legal representatives, co-conspirators, successors, subsidiaries, and

assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this

matter and the members of their immediate families and judicial staff.

RESPONSE: Defendant denies this matter should be brought as a class action.

84.     Plaintiff and all those similarly situated are entitled to have this cause of action

maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

RESPONSE: Deny.

85.     Defendants' acts and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class and any subclasses the Court might find to be appropriate.

RESPONSE: Deny.

86.     All members of the Class and any subclasses were and are similarly affected by the Defendants' acts and omissions, and the relief sought in this Complaint is for the benefit of Plaintiff and members of the Class and any subclasses.

RESPONSE: Deny.

87.     Plaintiff brings this action on behalf of those similarly situated for a cause of action of barratry for statutory penalties and fees against Defendants. Accordingly, Plaintiff specifically excludes and reserves to the class members any and all other damages claims or causes of action that the class members may have against Defendants.

RESPONSE: Defendant denies this matter should be brought as a class action.

88.     Based on the thousands of individuals who appear to be harmed by these schemes perpetrated by MMA, its principals, and the other co-conspirator Defendants, it is apparent that the number of plaintiffs in both the Class and any subclass(es) is so large as to make joinder impractical, if not impossible.

RESPONSE: Deny.

89.     Questions of law and fact common to the Plaintiff Class and any subclasses exist that predominate over questions affecting only individual members, including, inter alia:

a.      Whether the Velawcity Scheme constitutes barratry and improper solicitation of professional employment under TX GOVT § 82.0651;

b.      Whether MMA instituted suits and/or made claims to insurers that they knew they were not authorized to pursue with intent to obtain an economic benefit;

c.      The extent that the Defendants conspired together to engage in the improper solicitation of employment for MMA's economic benefit;

d.      The amounts paid to Velawcity by MMA in furtherance of these schemes;

e.      The extent to which the Equal Justice Defendants funded the scheme;

f.      The extent to which the actions of Velawcity were directed by MMA;

<u>RESPONSE:</u> Deny.

90.    The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and any subclasses is common to the members of each.

<u>RESPONSE:</u> Deny.

91.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclasses.

<u>RESPONSE:</u> Deny.

92.     Class representatives will be formally designated consistent with scheduling orders handed down by the Court.

RESPONSE: Defendant denies this matter should be brought as a class action.

93.     Plaintiff has retained counsel who are competent and experienced in class action litigation.

RESPONSE: Defendant lacks adequate information to admit or deny.

94.     Certification of this matter as a class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

RESPONSE: Deny.

95.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because of the cost of litigation through individual lawsuits. Moreover, there is a real and substantial chance of inconsistent verdicts or judgments if Plaintiff and the putative Plaintiff Class are unable to seek uniform resolution of their claims.

RESPONSE: Deny.

96.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

RESPONSE: Deny.

97.     Additionally, this action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications.

RESPONSE: Deny.

98.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole

RESPONSE: Deny.

99.     Alternatively, this action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of the asserted claims in this Complaint, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits against these corporate defendants, and in the case of MMA, against its principals. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' practices. There does not appear to be any difficulties in managing this class action. With leave and approval by the Court, Plaintiff intends to send notice to the proposed Rule 23 Class to the extent required by Fed. R. Civ. P. 23(c).

RESPONSE: Deny.

100.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum

simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

RESPONSE: Deny.

101.   The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

RESPONSE: Deny.

## VI.
## CAUSE OF ACTION

### PROHIBITED BARRATRY

102.   Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

RESPONSE: Defendant is not required to admit or deny. Defendant incorporates prior responses to preceding paragraphs.

103.   Defendants' actions alleged in the preceding paragraphs were committed with the intent to obtain an economic benefit for the Defendants;

RESPONSE: Deny.

104.   Defendants' actions amount to unlawful barratry and solicitation of professional employment, for the purposes of an action for civil liability for prohibited barratry as follows:

      a.   Knowingly instituting a lawsuit, or a claim to an insurer, that the person has not been authorized to pursue in violation of Penal Code §38.12(a)(1);

RESPONSE: Deny.

      b.   Soliciting employment, either in person or by telephone, for himself or for another in violation of Penal Code §38.12(a)(2);

RESPONSE: Deny.

     c.   Paying, giving, or offering to pay or give a person money or anything of value to solicit employment in violation of Penal Code §38.12(a)(4);

<u>RESPONSE:</u> Deny.

     d.   Accepting or agreeing to accept money or anything of value to solicit employment in violation of Penal Code §38.12(a)(6);

<u>RESPONSE:</u> Deny.

     e.   Knowingly financing the commission of unlawful barratry in violation of Penal Code §38.12(b)(1);

<u>RESPONSE:</u> Deny.

     f.   Investing funds the person knows or believes are intended to further the commission of unlawful barratry in violation of Penal Code §38.12(b)(2);

<u>RESPONSE:</u> Deny.

     g.   Knowingly accepting employment within the scope of the person's license, registration, or certification that results from unlawful barratry in violation of Penal Code §38.12(b)(3);

<u>RESPONSE:</u> Deny.

     h.   Soliciting through in-person contact, or through regulated telephone, social media, or other electronic contact, professional employment from a non-client in violation of Rule 7.03(b) of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas;

<u>RESPONSE:</u> Deny.

     i.   Sending, delivering, or transmitting, or knowingly permitting or causing another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence in violation of Rule 7.03(c) of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas;

RESPONSE: Deny.

        j.   Sending, delivering, or transmitting, or knowingly permitting or causing another person to send, deliver, or transmit, a solicitation communication to a prospective client that is not plainly marked or clearly designated an "ADVERTISEMENT" in violation of Rule 7.03(d)(2) of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas; and

RESPONSE: Deny.

        k.   Paying, giving, or offering to pay or give anything of value to a person not licensed to practice law for soliciting or referring prospective clients for professional employment in violation of Rule 7.03(e) of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas;

RESPONSE: Deny.

   105.   As set forth above, all defendants are liable for unlawful barratry and solicitation of professional employment, including but not limited to Velawcity as it relates to subparts b, d, f, h, i and j and the Equal Justice Defendants as it relates to c, e, f, and k.

RESPONSE: Deny.

   106.   Plaintiff Class claims damages provided by TX GOVT § 82.0651 in the form of an award of $10,000 for each person who was solicited by the prohibited barratry and reasonable and necessary attorney's fees.

RESPONSE: Defendant denies Plaintiff class is entitled to any damages or attorney's fees.

## VII.
## AFFIRMATIVE DEFENSES

Defendant TORT NETWORK, LLC alleges the following affirmative defenses:

Plaintiff's claims and the claims of the putative class Plaintiff seeks to represent fail or are otherwise barred, in whole or in part, or are limited because the subject communications constitute

commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such communications violates the First Amendment rights of the Defendant.

Plaintiff's claims and the claims of the putative class Plaintiff seeks to represent fail or are otherwise barred, in whole or in part, or are limited because the Plaintiff waived her complaint by opting in to communications transmitted by Defendant.

Plaintiff lacks Article III standing because Plaintiff was not injured.

To the extent any claim accrued prior to March 14, 2021, said claim is time-barred by a two-year statute of limitations pursuant to Texas Civil Practice and Remedies code § 16.003.

Plaintiff is estopped from asserting a claim for barratry as Plaintiff sought out contact from Defendants.

## VIII.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Defendant TORT NETWORK, LLC respectfully requests that a take-nothing judgment be entered against Plaintiff , and for such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

By: */s/ David J. Schenck*
David J. Schenck
Attorney-In-Charge
State Bar No. 17736870
Fed. Id. #330018 Southern District of Texas
Email: dschenck@dykema.com
Clay A. Cossé
State Bar No. 24071246
Fed. Id. #1635439 Southern District of Texas
Email: ccosse@dykema.com
Alexandra M. Twiss

State Bar No. 24082511
Fed. Id. #3556689 Southern District of Texas
Email: atwiss@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Ste. 4200
Dallas, TX 75201
Telephone:  214.462.6400
Fax:  214.462.6401

ATTORNEYS FOR DEFENDANT
Tort Network LLC d/b/a Velawcity

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2024, the foregoing document was filed with the Court via the Court's CM/ECF system and served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

*/s/ David J. Schenck*
David J. Schenck