## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **KATHERINE MONSON, individually and on behalf of all others similarly situated,**<br><br>***Plaintiffs***,<br><br>**v.**<br><br>**MCCLENNY MOSELEY & ASSOCIATES, JAMES MCCLENNY; JOHN ZACHARY MOSELEY; TORT NETWORK, LLC, EQUAL ACCESS JUSTICE FUND LP; and EAJF ESQ FUND LP**<br><br>***Defendants***. | **Civil Action No. 4:23-cv-00928**<br><br>**Jury Demanded** |

**DEFENDANTS EQUAL ACCESS JUSTICE FUND LP AND EAJF ESQ FUND LP'S ANSWER, AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED AND RESTATED COMPLAINT, CROSS ACTION, AND JURY DEMAND FILED SUBJECT TO DEFENDANTS EQUAL ACCESS JUSTICE FUND LP AND EAJF ESQ FUND LP'S RULE 12 MOTION TO DISMISS**

Subject to their Rule 12 Motion to Dismiss, Defendants EQUAL ACCESS JUSTICE FUND LP and EAJF ESQ FUND LP (collectively "THE FUNDS") file their Original Answer and Affirmative Defenses to Plaintiff Katherine Monson's First Amended and Restated Complaint for Class Action and Damages (Dkt. 56) ("the Complaint") and file their cross-complaints against Defendants Zachary John Moseley, James McClenny, and Tort Network, LLC.

## I. PARTIES

1.      THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 1.A. of the Complaint. Therefore, this should be considered denied.

2.      THE FUNDS admit the allegations in Paragraph 2.A. THE FUNDS admit the allegations in Paragraph 2.B. of the Complaint that McClenny is of the age of majority, but THE FUNDS are without information sufficient to form a belief as to the truth of the allegation that McClenny is domiciled in and a citizen of Texas and licensed to practice law in the State of Texas. THE FUNDS admit the allegations in subpart C that John Zachary Moseley, a person of the full age of majority domiciled in and a citizen of Texas, is presently licensed to practice law in the State of Texas and was engaged in the practice of law. THE FUNDS lack sufficient information to admit the allegations in subpart D. THE FUNDS admit the allegations in Paragraph 2 subparts E and F of the Complaint but deny that the principal place of business of THE FUNDS is Wilmington, DE.

THE FUNDS deny that THE FUNDS are jointly and severally liable for any conduct or claims alleged in the Complaint.

## II. JURISDICTION AND VENUE

3.      THE FUNDS deny the allegations in Paragraph 3 of the Complaint because the Complaint does not adequately plead facts sufficient to support a class action. THE FUNDS further deny that Plaintiff – either singularly or in conjunction with other unnamed plaintiffs - is entitled to any damages or damages in excess of $5,000,000.00.

4.      THE FUNDS deny the allegations in Paragraph 4 of the Complaint except that THE

FUNDS admit that THE FUNDS are citizens of various states including Delaware and Florida.

5.      THE FUNDS deny the allegations in Paragraph 5 of the Complaint.

### III. BACKGROUND

6.      THE FUNDS are without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint. Therefore, this should be considered denied.

7.      THE FUNDS are without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint. Therefore, this should be considered a denial.

8.      THE FUNDS deny the allegations in Paragraph 8 of the Complaint.

9.      THE FUNDS deny the allegations in Paragraph 9 of the Complaint.

### IV. FACTUAL BACKGROUND

10.     On information and belief, THE FUNDS admit the factual allegations in Paragraph 10 of the Complaint.

11.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint. Therefore, this should be considered denied.

12.     THE FUNDS state that the MSAs referenced in Paragraph 12 of the Complaint speak for themselves.

13.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint. Therefore, this should be considered denied.

14.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint. Therefore, this should be considered denied.

15.     THE FUNDS lack sufficient information to form a belief as to the truth of the

allegations in Paragraph 15 of the Complaint. Therefore, this should be considered a denied.

16.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint. Therefore, this should be considered a denied.

17.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint. Therefore, this should be considered denied.

18.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint. Therefore, this should be considered denied.

19.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint. Therefore, this should be considered denied.

20.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint. Therefore, this should be considered denied.

21.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint. Therefore, this should be considered denied.

22.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint. Therefore, this should be considered denied.

23.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint. Therefore, this should be considered denied.

24.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint. Therefore, this should be considered denied.

25.     THE FUNDS lack sufficient information to form a belief as to the truth of the

allegations in Paragraph 25 of the Complaint. Therefore, this should be considered denied.

26.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint. Therefore, this should be considered denied.

27.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint. Therefore, this should be considered denied.

28.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint. Therefore, this should be considered denied.

29.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint. Therefore, this should be considered denied.

30.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint. Therefore, this should be considered denied.

31.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint. Therefore, this should be considered denied.

32.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint. Therefore, this should be considered denied.

33.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint. Therefore, this should be considered denied.

34.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint. Therefore, this should be considered denied.

35.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint. Therefore, this should be considered denied.

36.    THE FUNDS lack sufficient information to form a belief as to the truth of the

allegations in Paragraph 36 of the Complaint. Therefore, this should be considered denied.

37.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint. Therefore, this should be considered a denial.

38.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint. Therefore, this should be considered denied.

39.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint. Therefore, this should be considered denied.

40.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint. Therefore, this should be considered denied.

41.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint. Therefore, this should be considered denied.

42.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint. Therefore, this should be considered denied.

43.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint. Therefore, this should be considered denied.

44.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint. Therefore, this should be considered denied.

45.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 45 of the Complaint. Therefore, this should be considered denied.

46.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 46 of the Complaint. Therefore, this should be considered denied.

47.     THE FUNDS lack sufficient information to form a belief as to the truth of the

allegations in Paragraph 47 of the Complaint. Therefore, this should be considered denied.

48.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint. Therefore, this should be considered denied.

49.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 49 of the Complaint. Therefore, this should be considered denied.

50.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint. Therefore, this should be considered denied.

51.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint. Therefore, this should be considered denied.

52.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint. Therefore, this should be considered denied.

53.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint. Therefore, this should be considered denied.

54.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint. Therefore, this should be considered denied.

55.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint. Therefore, this should be considered denied.

56.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint. Therefore, this should be considered denied.

57.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint. Therefore, this should be considered denied.

*Funding Source*

58.    THE FUNDS admit that MMA obtained loans from or through one or more of THE FUNDS in amounts and on terms and conditions and on dates set forth in the applicable loan documents, but deny the allegations that MMA "turned to" THE FUNDS to fund any "scheme" as alleged in Paragraph 58 of the Complaint.

59.    THE FUNDS admit that MMA obtained loans from or through one or more of THE FUNDS in amounts and on terms and conditions and on dates set forth in the applicable loan documents but deny the allegation in Paragraph 59 that the loans were made to "other affiliated persons and entities" (other than McClenny Law Group, Inc. and Mosely Law Group, Inc., which were represented to THE FUNDS as dormant predecessor entities to MMA).

60.    THE FUNDS admit that MMA obtained loans from or through one or more of THE FUNDS in amounts and on terms and conditions and on dates set forth in the applicable loan documents but deny the allegation in Paragraph 60 of the Complaint that the loans were made to "other affiliated persons and entities" (other than McClenny Law Group, Inc. and Mosely Law Group, Inc., which were represented to THE FUNDS as dormant predecessor entities to MMA).

61.    THE FUNDS admit that MMA obtained loans from or through one or more of THE FUNDS in amounts and on terms and conditions and on dates set forth in the applicable loan documents.

62.    THE FUNDS admit that MMA obtained loans from or through one or more of THE FUNDS in amounts and on terms and conditions and on dates set forth in the applicable

loan documents.

63.     THE FUNDS admit that the Obligations (as defined) in the loan agreements shall be secured by valid, perfected, and enforceable Liens on all right, title and interest of the Borrower in all of its real property, personal property, and fixtures, including all of the Law Firm Proceeds of all Cases, whether now owned or hereafter acquired, and all proceeds thereof, but excluding Excluded Property, but otherwise deny the allegations in Paragraph 63 of the Complaint.

64.     THE FUNDS deny the allegations in Paragraph 64 of the Complaint.

65.     THE FUNDS admit that MMA defaulted on its loan obligations and that THE FUNDS initiated legal proceedings against MMA and Moseley as alleged in Paragraph 65 of the Complaint.

66.     THE FUNDS deny the allegations in Paragraph 66 of the Complaint.

67.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 67 of the Complaint. Therefore, this should be considered denied.

68.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 68 of the Complaint. Therefore, this should be considered denied.

69.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 69 of the Complaint. Therefore, this should be considered denied.

70.     THE FUNDS deny the allegations in Paragraph 70 of the Complaint.

*Court and State Action Against MMA in Louisiana*

71.     THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 71 of the Complaint. Therefore, this should be considered denied.

72.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 72 of the Complaint. Therefore, this should be considered denied.

73.    THE FUNDS admit the allegations in Paragraph 73 of the Complaint.

74.    THE FUNDS admit the substance of the allegations in Paragraph 74 of the Complaint.

75.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 75 of the Complaint. Therefore, this should be considered denied.

76.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 76 of the Complaint. Therefore, this should be considered denied.

77.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 77 of the Complaint. Therefore, this should be considered denied.

78.    THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 78 of the Complaint. Therefore, this should be considered denied.

79.    THE FUNDS deny that THE FUNDS were part of any scheme as alleged in the Complaint but otherwise lack sufficient information to admit or deny the allegations about MMA in Paragraph 79 of the Complaint.

## V. CLASS ALLEGATIONS

80.    THE FUNDS incorporate the prior responses to the preceding paragraphs in response to Paragraph 80 of the Complaint.

81.    THE FUNDS deny that this matter may or should be brought as a class action.

82.    THE FUNDS deny that this matter may or should be brought as a class action.

83.    THE FUNDS deny that this matter may or should be brought as a class action.

84. THE FUNDS deny that this matter may or should be brought as a class action as alleged in Paragraph 84 of the Complaint.

85. THE FUNDS deny the allegations in Paragraph 85 of the Complaint.

86. THE FUNDS deny the allegations in Paragraph 86 of the Complaint.

87. THE FUNDS deny that this matter should be brought as a class action as alleged in Paragraph 87 of the Complaint. The Funds further deny that Plaintiff and the class members may properly bring a claim for statutory penalties and fees without alleging an injury that is concrete, particularized, and actual or imminent, and fairly traceable to any actions of the Funds; and redressable by a favorable ruling. The Funds further deny that Plaintiff and the class members suffered an injury that is concrete, particularized, and actual or imminent, and fairly traceable to any actions of the Funds; and redressable by a favorable ruling.

88. THE FUNDS deny the allegations in Paragraph 88 of the Complaint and specifically deny that THE FUNDS are "co-conspirators" with any other defendant or party.

89. THE FUNDS deny the allegations in Paragraph 89 of the Complaint and specifically deny that the Funds "funded the scheme" in any respect or had knowledge of any scheme alleged in Paragraph 89(e) of the Complaint.

90. THE FUNDS deny the allegations in Paragraph 90 of the Complaint.

91. THE FUNDS deny the allegations in Paragraph 91 of the Complaint.

92. THE FUNDS deny that this matter should be brought as a class action.

93. THE FUNDS lack sufficient information to form a belief as to the truth of the allegations in Paragraph 93 of the Complaint. Therefore, this allegation should be

considered denied.

94.    THE FUNDS deny the allegations in Paragraph 94 of the Complaint.

95.    THE FUNDS deny the allegations in Paragraph 95 of the Complaint.

96.    THE FUNDS deny the allegations in Paragraph 96 of the Complaint.

97.    THE FUNDS deny the allegations in Paragraph 97 of the Complaint.

98.    THE FUNDS deny the allegations in Paragraph 98 of the Complaint.

99.    THE FUNDS deny the allegations in Paragraph 99 of the Complaint.

100.    THE FUNDS deny the allegations in Paragraph 100 of the Complaint.

101.    THE FUNDS deny the allegations in Paragraph 101 of the Complaint.

## VI. CAUSE OF ACTION
## PROHIBITED BARRATRY

102.    THE FUNDS incorporate the prior responses to the preceding paragraphs above.

103.    THE FUNDS deny the allegations in Paragraph 103 of the Complaint.

104.    THE FUNDS deny the allegations in subparts a–k of Paragraph 104 of the
Complaint.

105.    THE FUNDS deny the allegations in Paragraph 105 of the Complaint.

106.    THE FUNDS deny that Plaintiff or any class or class members suffered or are
entitled to recover damages, including statutory fines or otherwise, as alleged in Paragraph
106 of the Complaint.

## VII. AFFIRMATIVE DEFENSES

THE FUNDS assert the following affirmative defenses:

107.    The Complaint fails to state facts sufficient to constitute a cause of action for

barratry under Texas law against THE FUNDS.

108.   The Complaint fails to state any or sufficient facts of any conduct on the part of THE FUNDS that would constitute a knowing or intentional violation of Texas law.

109.   The conduct alleged in the Complaint constitutes commercial speech protected by Texas law and the First Amendment of the United States Constitution and the imposition of liability for such communications violates the rights of the Defendants including THE FUNDS.

110.   The Complaint violates THE FUNDS right of association to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern and the imposition of liability for the exercise of such rights violates the rights of the Defendants including THE FUNDS.

111.   THE FUNDS assert the affirmative defense of ratification and waiver by conduct on the part of Plaintiff by responding to and voluntarily opting in to and participating in communications with MMA, Moseley, Velawcity and McClenny Defendants.

112.   THE FUNDS assert the affirmative defense that, as to THE FUNDS, Plaintiff lacks Article III standing because Plaintiff was not injured by any conduct alleged against THE FUNDS and neither Plaintiff nor any alleged class member has suffered an injury that is concrete, particularized, and actual or imminent, and fairly traceable to any alleged conduct of THE FUNDS, and redressable by a favorable ruling.

113.   To the extent any claim alleged against THE FUNDS accrued prior to April 3, 2022, two years before the first time Plaintiff brought claims against THE FUNDS for any conduct alleged in the Complaint, those claims are barred by the applicable two-year statute

of limitations.

114.   THE FUNDS assert that THE FUNDS did not knowingly or intentionally fund or invest in conduct THE FUNDS knew or believed were intended to further or constituted the commission of an offense under Texas Penal Code Section 38.12.

115.   THE FUNDS assert the affirmative defenses of equitable estoppel, estoppel by conduct, and unclean hands because Plaintiff voluntarily sought out and participated in contact and communications with certain Defendants and did not complain or demand that those Defendants cease and desist from any unwanted or improper conduct. Moreover, THE FUNDS affirmatively assert that the conduct complained of was allegedly committed by a third party or parties over whom THE FUNDS had no such knowledge or control. THE FUNDS further affirmatively assert Chapter 33 of the Texas Civil Practice & Remedies Code and that proportionate responsibility of the Plaintiff and that the plaintiff, any defendant, settling party, or responsible third party be submitted to the trier of fact to determine their percentage of responsibility, if any.

116.   THE FUNDS reserve the right to assert any other affirmative defenses that are supported by facts later discovered throughout this case.

### VIII. CROSS-PLAINTIFFS' CROSS ACTION
### AGAINST CROSS-DEFENDANT TORT NETWORK LLC D/B/A VELAWCITY

117.   Defendant and Cross-Defendant Tort Network, LLC doing business as Velawcity is a legal services marketer. Velawcity operates marketing campaigns for law firms to develop new clients. Cross-Plaintiffs THE FUNDS are lenders that specialize in providing funds to law firms to fund law firm operations and litigation, providing law firm clients

with access to legal services. THE FUNDS made loans to the law firm formerly known as McClenny Moseley & Associates, PLLC, a Texas professional limited liability company, now known as MMA Law Firm, PLLC (hereinafter referred to as "MMA"), which is a professional limited liability corporation located at 1415 Louisiana Street, Suite 2900, Houston, Texas 77002.

118.   THE FUNDS made loans to MMA pursuant to certain Loan Agreements and amendments thereto (collectively the "Loan Agreements") by which MMA is the Borrower. The loans were personally and fully guaranteed by Defendant Moseley and Defendant McClenny. THE FUNDS and MMA agreed that the Loan Agreements evidenced a loan and financing agreement, not a fee sharing agreement between THE FUNDS and MMA. Further, THE FUNDS' only interest was solely the collection of the Obligations (as the loans were defined). MMA agreed that it shall use the proceeds of the Loans only for the commercial purpose of funding MMA's law firm expenses.

119.   Further, MMA agreed that it shall not use any Loan proceeds to fund any commercial or business activities (including litigation funding of third parties) other than MMA's law firm expenses. MMA specifically represented and warranted that it is in compliance with all Legal Requirements applicable to or pertaining to its business operations, including all federal, state and local attorney ethics rules and regulations relating to attorney financing. MMA agreed to comply in all respects with all legal requirements applicable to or pertaining to its business operations, including all federal, state and local attorney ethics rules and regulations relating to attorney financing. Indeed, MMA agreed that the intent of both MMA as Borrower and THE FUNDS was to strictly

comply with all laws and all relevant ethical obligations.

120.    MMA allegedly used the loan proceeds to retain Velawcity, the marketing company, for lead generation in Louisiana following a trio of hurricanes that hit the Louisiana coastline in late 2020 and 2021. THE FUNDS did not control or dictate the manner and means by which MMA marketed or generated clients, but MMA was contractually required to comply with all laws and ethical obligations in its use of the loan proceeds. MMA entered into a series of contracts with Velawcity for marketing services to identify potential clients within certain designated areas. Beginning in December 2021, MMA entered into five contracts with Velawcity to generate potential clients in Louisiana, pre-screen them to determine eligibility, and transmit to MMA the client's contact information. In exchange MMA paid, and perhaps even pre-paid, Velawcity for these services. It appears that MMA paid Velawcity more than $13 million for more than 4,500 signed Louisiana client contracts. As a result, MMA began filing thousands of lawsuits in Louisiana on behalf of Louisiana clients, which brought attention, scrutiny, and investigation by Louisiana regulators, the Louisiana Supreme Court, and Louisiana state and federal trial judges.

121.    On August 22, 2023, the United States District Court for the Western District of Louisiana entered an order finding that MMA is "not entitled to any attorney fees, costs and/or expenses in any of the cases [listed in an attachment of cases pending in the Western District of Louisiana]." The District Court stated that "MMA and related parties have no property interest/ownership in the proceeds of any cases pending in this Court, including the attached cases." *Exhibit A*. The court found that "MMA's clear solicitation of clients voids any contract of representation." *Id*. Shortly thereafter, Magistrate Judge Kay of the

Western District of Louisiana issued an order in one of MMA's cases finding the solicitation of the particular client at issue was conducted by Velawcity and was illegal. *Exhibit B.*

122.    On September 22, 2023, the United States District Court for the Western District of Louisiana—Lake Charles Division, entered an order holding that "[t]he contingency fee contract between MMA and [plaintiff] is unenforceable because it violates a rule of public order . . . ." Id. The Louisiana federal court found that, "MMA obtained its contingency fee contract with [plaintiff] through a third-party marketing firm, Velawcity, a modern-day case runner that MMA paid for client contracts. . . . Any contracts arising out of this illegal relationship violated Louisiana law prohibiting payment in exchange for procuring clients and prohibiting the practice of law by those not licensed to do so. Contingency fee agreements like the one signed by Plaintiff are thus absolutely null and unenforceable." *Id.* (emphasis added)

123.    Velawcity received millions of dollars from MMA and its principals that in reasonable probability may be traced to the loan proceeds provided to MMA by THE FUNDS. Indeed, THE FUNDS have been sued in this federal class action specifically on the specious allegation THE FUNDS had actual knowledge that the funds it loaned to MMA were in furtherance of the commission of barratry. While that allegation is absolutely false, and no facts suggest otherwise, the allegation that MMA used loan proceeds to pay Velawcity and engaged with Velawcity in an improper marketing effort has resulted in Louisiana courts declaring MMA's client contracts invalid, negating THE FUNDS' security interest in MMA revenues to repay its loan obligations. Velawcity, by

its receipt of millions from MMA apparently derived from THE FUNDS and its actions in the state of Louisiana, has been enriched unjustly to the specific detriment of THE FUNDS.

124.   THE FUNDS bring this cross action for damages against Cross-Defendant Velawcity which has wrongfully secured a benefit of more than $13,000,000.00 in reasonable probability paid by THE FUNDS to Defendant MMA and its principals for the purpose of operating the MMA law firm business. Based on, among other things, findings by several federal district courts, it would be unconscionable for Velawcity to retain these funds, as they were obtained and used by Velawcity to pursue an illegal and improper course of action as determined by judges of the Western District of Louisiana.

125.   Velawcity received from MMA more than $13 million dollars, in reasonable probability originating from THE FUNDS. The purpose of THE FUNDS providing loan proceeds to MMA was to operate the MMA law firm, not to *improperly* solicit potential clients in violation of law. Velawcity's conduct was wrongful and was paid for using money provided by THE FUNDS, resulting in unjust enrichment of Velawcity to the specific detriment of THE FUNDS because Velawcity's actions violated Louisiana law regarding case running and unauthorized practice of law.

126.   The cause of action for unjust enrichment is available where no contract covers the subject matter of the dispute. There is no contractual relationship between THE FUNDS and Velawcity. For the reasons set forth above, THE FUNDS bring this cross action against Cross-Defendant Velawcity to recover the value of the loan proceeds advanced to MMA and used by Velawcity for its illegal solicitation of clients in contravention of Louisiana law.

## IX. CROSS-PLAINTIFFS' CROSS ACTION AGAINST CROSS-DEFENDANT GUARANTORS JOHN MOSELEY AND JAMES MCCLENNY

127. Cross-Plaintiffs THE FUNDS – Equal Access Justice Fund LP ("EAJF") and EAJF ESQ Fund LP ("ESQ") - made loans to Defendant MMA pursuant to the Loan Agreements among McClenny Moseley & Associates, PLLC, McClenny Law Group, Inc., and Moseley Law Group, Inc., as Borrower, and Cross-Defendants John Zachary Moseley, individually, and James McClenny, individually, as Guarantors, and THE FUNDS as Lender. Cross-Defendants Moseley and McClenny will be referred to herein collectively as "Guarantor."

128. EAJF made an initial loan that provided a credit facility to MMA in the form of a loan in an amount equal to $8,000,000 (the "Initial Loan"). MMA agreed to make mandatory payments of the accrued interest then payable and owing on the Loan on the 10th day after the end of each calendar quarter beginning with the calendar quarter ending December 31, 2021 and continuing each calendar quarter thereafter until the Maturity Date. Following the Maturity Date, MMA agreed to make mandatory payments on the 10th day after the end of each calendar month in an amount equal to 20% of the Law Firm Proceeds for such calendar month. Typical of arms' length loan agreements (as opposed to equity investments for example), MMA's repayment obligations terminate when it repays the principal and accrued interest and fees on the loans.

129. EAJF also provided a credit facility to MMA in the form of a loan in an amount equal to $2,000,000 (the "Additional Loan"). The Additional Loan together with the Initial Loan combined in a single loan with the principal amount of $10,000,000. The repayment terms of the Additional Loan are substantially the same as the repayment terms of the Initial

Loan. Pursuant to an Amendment No. 2 THE FUNDS made an additional loan to MMA in the amount of $5,000,000.

130.    The EAJF ESQ Fund LP made loans to Defendant MMA pursuant to that certain Loan Agreement dated June 10, 2022, among McClenny Moseley & Associates, PLLC, McClenny Law Group, Inc., and Moseley Law Group, Inc., as Borrower, John Zachary Moseley, individually, and James McClenny, individually, as Guarantors, and ESQ, as Lender.

131.    ESQ provided a credit facility to MMA in the form of a loan in an amount equal to $10,000,000 (the "ESQ Loan"). Pursuant to the ESQ Loan, MMA agreed to make mandatory payments of the accrued interest then payable and owing on the Loan on the 10th day after the end of each calendar quarter beginning with the calendar quarter ending June 30, 2022, and continuing each calendar quarter thereafter until the Maturity Date. Following the Maturity Date, MMA agreed to make mandatory payments on the 10th day after the end of each calendar month in an amount equal to 20% of the Law Firm Proceeds for such calendar month as defined in the Loan Agreement. Typical of arms' length loan agreements (as opposed to equity investments for example), MMA's repayment obligations terminate when it repays the principal and accrued interest and fees on the loans.

132.    The ESQ Loan, the Initial Loan, and the Additional Loan may be collectively referred to herein as the "Loan Agreements" unless required to discuss terms that differ between such loans.

These loans made pursuant to the Loan Agreements are with full recourse.

133.    Pursuant to Section 10.1 of the Loan Agreements, the Obligations of MMA and Guarantor shall be secured by valid, perfected, and enforceable Liens on all right, title, and interest of the MMA in all of its real property, personal property, and fixtures, including all of the Law Firm Proceeds of all Cases, whether now owned or hereafter acquired, and all proceeds thereof, but excluding any Excluded Property. The MMA and Guarantor acknowledged and agreed that the Liens on Collateral shall be granted to THE FUNDS and shall be valid and perfected first-priority Liens.

134.    Further, MMA and Guarantor authorized THE FUNDS to file UCC-1 financing statements to establish and perfect THE FUNDS' liens on all of MMA's real property, personal property, and fixtures, including all of the Law Firm Proceeds of all Cases.

135.    As of October 12, 2021, and August 1, 2022, EAJF perfected its security interest in all accounts, income, receipts, revenue, and other assets described in that UCC Financing Statement filing no. 21-0044998138 filed of record with the Texas Secretary of State as to the Debtor, McClenny Moseley & Associates, PLLC. ESQ perfected its security interest in all accounts, income, receipts, revenue, and other assets described in that UCC Financing Statement filing no. 22-0037965357, filed of record with the Texas Secretary of State as to the Debtor, McClenny Moseley & Associates, PLLC. Lenders therefore have liens on the contingent interest / attorneys' fees contractually agreed to and/or earned by McClenny Moseley & Associates, PLLC, resulting from, arising out of, or related to the Collateral, including Law Firm Proceeds of Cases from any lawsuits and client settlements to which McClenny, Moseley & Associates, PLLC, is entitled by virtue of their engagement and fee agreements with clients.

136.    MMA and Guarantor made certain representations and warranties on which Lender relied to make the loans at issue in this proceeding. MMA and Guarantors also agreed to indemnify THE FUNDS for all losses, claims, damages, penalties, judgments, liabilities, and expenses arising out of or related to any loan document or the application of any loan proceeds.

137.    The Loan Agreements contain a list of matters which constitute Events of Default. Those matters include default in the payment when due of all or part of the principle or interest on the Loans of any fees or other obligations payable under the terms of the Initial Loan Agreement and Amended Loan Agreement, default in the observance of covenants set forth in Section 7 of the agreements, any untrue representation or warranty, if any Collateral Document shall for any reason fail to create a valid and perfected first priority lien in favor of EAJF in any collateral covered by the Collateral Documents, and other matters as set forth in the Initial Loan Agreement and the Amended Loan Agreement.

138.    MMA and Guarantor absolutely, unconditionally, and irrevocably guaranteed jointly and severally the timely performance of all present and future obligations under the terms of the Loan Agreements.

139.    MMA further agreed to indemnify THE FUNDS against all losses, claims, damages, liabilities, and expenses (including expenses of litigation) which THE FUNDS may pay or incur arising out of or relating to the Loan Agreements or any of the transactions contemplated thereby.

140.    Defendants MMA and Cross-Defendant Guarantors have defaulted on the Loan Agreements' terms and conditions. THE FUNDS provided notice to Cross-Defendant

Moseley and Defendant MMA of such defaults. Cross-Defendants as personal guarantors have not cured the defaults to date. THE FUNDS therefore bring this cross action against the Cross-Defendant Guarantors Moseley and McClenny in the present lawsuit to enforce the terms of the Loan Agreements to protect THE FUNDS' interests and enforce THE FUNDS' contractual rights to repayment of the loans and indemnification of THE FUNDS by the Cross-Defendant Guarantors following the default by MMA.

## X. . PRAYER FOR RELIEF

For the reasons set forth above, THE FUNDS respectfully request that

1. the Court enter a take-nothing judgment against Plaintiff Katherine Monson and the putative class of individuals described in the Complaint;

2. grant Cross-Plaintiff THE FUNDS judgment against Cross-Defendant Velawcity for unjust enrichment and damages incurred as a result thereof;

3. grant Cross-Plaintiff THE FUNDS judgment for money damages and all indemnified losses, claims, damages, penalties, judgments, liabilities, or expenses against Cross-Defendants Zachary John Moseley and James McClenny in an amount to be proved at trial including reasonable and necessary attorneys' fees, expert costs, and other costs of court; and

4. for all other relief, at law or in equity, to which THE FUNDS may be justly entitled.

## JURY DEMAND

THE FUNDS demand a trial by jury on all claims.

Respectfully submitted,

**SPENCER FANE LLP**

By: ***/s/ Brian W. Zimmerman***
    Brian W. Zimmerman
    Texas Bar No. 00788746
    Fed ID. 00788746
    bzimmerman@spencerfane.com
    Frederick T. Johnson
    Texas Bar No. 00785429
    Fed ID. 00785429
    fjohnson@spencerfane.com
    Brain C. Poldrack
    Texas Bar No. 24046641
    Fed ID. 24046641
    bpoldrack@spencerfane.com
    3040 Post Oak Blvd., Suite 1400
    Houston, TX 77056
    Telephone:   713-552-1234
    Facsimile:   713-963-0859

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2024, the foregoing document was filed with the Court via the Court's CM/ECF system and served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

        ***/s/ Brian W. Zimmerman***
        Brian W. Zimmerman