Case 4:23-cv-00928 Document 89 Filed on 09/19/24 in TXSD Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
September 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Katherine Monson, individually and on behalf of others similarly situated, | § § § § § § § § § § § § § § § § § | |
| *Plaintiff,* | | |
| | | Case No. 4:23-cv-00928 |
| v. | | |
| McClenny, Moseley & Associates, PLLC; James McClenny; John Zachary Moseley; Tort Network, LLC; Equal Access Justice Fund LP, and EAJF ESQ Fund LP, | | |
| *Defendants.* | | |

## **MEMORANDUM AND RECOMMENDATION**

In this putative class action suit, which was referred to the undersigned judge, Dkt. 38, Defendants Equal Access Justice Fund LP and EAJF ESQ Fund LP (collectively, "EAJF") filed a motion under Fed. R. Civ. P. 12 to dismiss all claims brought by Plaintiff Katherine Monson. Dkt. 64. After carefully considering the motion, Monson's response, Dkt. 74, EAJF's reply, Dkt. 76, the pleadings, and the applicable law, it is recommended that EAJF's motion to dismiss (Dkt. 64) be granted, and that Monson's passing request for leave to amend be denied.

## Background

The background to this case is detailed in the Court's prior decision denying a separate motion to dismiss Monson's barratry claims against Defendants McClenny, Moseley & Associates, PLLC, James McClenny, and John Zachary Moseley (collectively, "MMA"), and Tort Network, LLC ("Velawcity"). *See Monson v. McClenny, Moseley & Assocs., PLLC*, 2024 WL 1078303, at *1-2, 7 (S.D. Tex. Feb. 23, 2024), *adopted by* 2024 WL 1291534 (S.D. Tex. Mar. 25, 2024). The following summary focuses on Monson's allegations against EAJF, which are taken as true at this stage.

This case arises out of a suit alleging that MMA, Velawcity, and EAJF violated Section 82.0651 of the Texas Government Code by engaging in a barratry scheme. As originally pleaded, Texas lawyers MMA executed marketing service agreements ("MSAs") with Velawcity, an Arizona-based legal marketing firm, to improperly solicit legal employment from property owners in Louisiana who had trouble getting their insurers to pay windstorm claims. Dkt. 1 at 4-5. Velawcity purportedly sent unsolicited text messages and other forms of communications to thousands of individuals, including Monson, informing them about pending claims for hurricane storm damage. *Id.* at 5. The messages directed recipients to complete a form to claim compensation. *Id.* But after Monson completed the form, she allegedly received more communications encouraging her to sign an online retention

2

agreement that would authorize MMA to pursue her claim. *Id.* at 6-10. Monson did not sign the agreement. *Id.* at 8.

MMA and Velawcity moved to dismiss Monson's claims for lack of Article III standing and, alternatively, on extraterritoriality grounds. Dkt. 14, 25. The undersigned initially recommended granting the motions to dismiss because Monson failed to demonstrate that she had standing to bring her claims. Dkt. 40 (previous "M&R"). But the undersigned reconsidered that recommendation after Monson's objections to the M&R raised new theories supporting her standing to sue. *Monson*, 2024 WL 1078303, at *1. Ultimately, the Court denied the motions to dismiss and granted Monson leave to amend her standing allegations and add new defendants. *Id.* at *11.

In an amended complaint, Monson added EAJF as a defendant. *See* Dkt. 56 at 1-2. According to that pleading, EAJF knowingly funded the barratry scheme by making large loans to MMA to pay for Velawcity's services under the MSAs. Dkt. 56 ¶ 64. EAJF initially provided MMA with a $10 million loan through agreements signed in September 2021 and March 2022. *Id.* ¶ 59. This loan required MMA to pay interest only for a certain period, followed by mandatory monthly payments amounting to 20% of the law firm's proceeds each month after the maturity date. *Id.* In June 2022, another loan agreement was executed for an additional $10 million, subject to similar terms and payment obligations. *Id.* ¶ 61. Later, in November 2022, an amendment to

3

the loan agreement allowed EAJF to lend an additional $5 million under the same terms. *Id.* ¶ 60. These loans purportedly coincide with the dates of the MSAs (December 8, 2021, February 5, 2022, May 5, 2022, May 23, 2022, and August 2, 2022) through which MMA paid Velawcity, in advance, a minimum of $13,938,000 for at least 4,628 clients. *Id.* ¶¶ 10, 13.

EAJF filed a motion to dismiss, contending that Monson fails to state a cognizable basis for relief under Texas Government Code § 82.0651 and lacks standing to bring her claims. Dkt. 64. Monson responded, Dkt. 74, and EAJF filed a reply, Dkt. 76. The motion is ripe for resolution.

## **Legal standard**

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken

4

as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

## Analysis

### I. Monson has standing to sue.

As a threshold matter, EAJF joins in MMA's and Velawcity's prior arguments disputing Monson's standing to sue for violations of Section 82.0651 of the Texas Government Code.[1] Dkt. 64 at 20-22. But the Court already resolved this issue in its prior opinion, concluding that Monson has standing to bring her claims. *See Monson*, 2024 WL 1078303, at *7. EAJF's motion raises no new theories to contest Monson's Article III standing. Therefore, as previously concluded, (1) Monson's allegations that EAJF (and other defendants) violated the anti-barratry statute, Tex. Gov't Code § 82.0651, implicates privacy interests, *see id.* at *4-5; (2) at least one solicitation, specifically "[t]he initial unwanted text message that Monson allegedly

---

[1] As EAJF recognizes, this is actually a Rule 12(b)(1) argument. Dkt. 64 at 20 (invoking dismissal standard under Fed. R. Civ. P. 12(b)(1) in its final argument).

5

received on July 17, 2022, *see* Dkt. 41-2 ¶¶ 19-20, 42, by itself, qualifies as a concrete injury that gives her standing to sue," *id.* at *7; and (3) "even if Section 82.0651 were not concerned with safeguarding privacy rights, Monson's ... amended complaint nonetheless has articulated a cognizable harm—namely, the intrusion upon her seclusion resulting from the prohibited solicitations," *id.* Consistent with this Court's prior opinion, EAJF's challenge to Monson's standing to sue should be rejected.

## II. Monson fails to assert plausible barratry claims against EAJF.

EAJF's other arguments for dismissal fall into two categories. As one contention, EAJF mounts an extraterritoriality challenge, claiming that the Texas anti-barratry statutes cannot apply because none of its conduct occurred in Texas. Dkt. 64 at 17-20. Second and separately, EAJF attacks the sufficiency of Monson's allegations that it violated Section 82.0651 of the Texas Government Code. *Id.* at 8-17. Given the recommended disposition of EAJF's challenge to the plausibility of Monson's Section 82.0651 claims, the Court need not reach the extraterritoriality question.[2]

---

[2] Notably, this Court previously relied on a Texas intermediate appellate decision to conclude that the claims against MMA and Velawcity were not extraterritorial. *See Monson*, 2024 WL 1078303, at *8-9; *see also Cheatham v. Pohl*, 2022 WL 3720139, at *8 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, pet. granted) (holding that out-of-state actors' conduct within Texas made Section 82.0651 applicable without needing to address issue of extraterritoriality), *pet. granted*, No. 23-0045 (Tex. May 31, 2024). But the Texas Supreme Court recently granted review in *Cheatham* and set oral argument for October 2, 2024.

6

Under Section 82.0651, anyone "who was solicited by conduct" that violates Section 38.12(a) or (b) of the Texas Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, "may file a civil action against any person who committed barratry." Tex. Gov't Code § 82.0651(c). According to Monson, EAJF knowingly financed MMA's barratry scheme in violation of Texas Penal Code § 38.12(a)(4), (b)(1), (b)(2), and Disciplinary Rule 7.03(e). Dkt. 56 ¶¶ 104-05. As support, Monson alleges that EAJF made recurring loans to MMA within the same timeframe that MMA contracted Velawcity to improperly solicit clients. *Id.* ¶¶ 59-61. Monson contends that the timing of Defendants' actions, coupled with the fact that the loan repayments were tied to a percentage of MMA's earnings, evince EAJF's knowledge that the loan proceeds would fund MMA's client-solicitation agreements with Velawcity. *Id.* ¶¶ 59-61, 64; Dkt. 74 at 9-10.

For its part, EAJF disputes that Monson has pleaded an actionable barratry claim. First, EAJF argues that Rule 7.03(e) does not apply to it. Dkt. 64 at 16-17. Second, EAJF challenges Monson's contention that it knowingly financed the barratry scheme in violation of Section 38.12(b)(1) and (b)(2) because Monson's factual allegations do not support such an inference. *Id.* at 12-16. Third and lastly, EAJF argues that Section 38.12(a)(4) does not reach lenders, and even if it did, Monson's allegations are nonetheless

7

insufficient because EAJF did not pay another to solicit employment. *Id.* at 11-12. These contentions are addressed in turn below.

### A. Rule 7.03(e) does not apply to EAJF.

As one of its theories, Monson asserts that EAJF violated Section 82.0651 by violating Rule 7.03(e) of the Texas Disciplinary Rules of Professional Conduct. This contention fails as a matter of law. Disciplinary Rule 7.03 states that "[a] *lawyer* shall not pay, give, or offer to pay or give anything of value to a person not licensed to practice law for soliciting or referring prospective clients for professional employment …." Tex. Discipl. R. Prof'l Conduct 7.03(e) (emphasis added). By its terms, the prohibition is limited to lawyers, which excludes EAJF. As a result, Monson cannot bring a Section 82.0651 claim against EAJF premised on Rule 7.03(e).

### B. Monson failed to plead a cognizable claim under Section 38.12(b)(1) and (b)(2).

As another theory, Monson alleges that EAJF violated Texas Penal Code § 38.12(b)(1) and (b)(2). *See* Dkt. 56 ¶¶ 64, 104-05. Those provisions state:

A person commits an offense if the person:

(1) knowingly finances the commission of an offense under Subsection (a); [or]

(2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a) ….

Tex. Penal Code § 38.12(b)(1)-(2). Subsection (a), in turn, makes it an offense for a person, "with intent to obtain an economic benefit," to, *inter alia*,

8

"(2) solicit[] employment, either in person or by telephone, for himself or for another …; [or] (4) pay[] or give[] or offer[] to pay or give a person money … to solicit employment." *Id.* § 38.12(a)(2), (4).

Monson pleads "[u]pon information and belief" that EAJF "knew MMA would use the proceeds of the loans to fund" the barratry scheme, in violation of Section 38.12(b)(1) and (b)(2). Dkt. 56 ¶ 64. She supports this allegation by detailing the amounts and dates of the loans and the MSAs, *id.* ¶¶ 10, 59-61, along with the loan repayment terms, *id.* ¶ 59, noting that the "agreements entered into by MMA and Velawcity roughly coincide with the infusions of cash provided by [EAJF]," Dkt. 74 at 9. She further claims that EAJF holds perfected security interests in MMA's property. Dkt. 56 ¶ 63. Monson argues it is reasonable to infer that, before making the loans, EAJF would have required financial projections and business plans to ensure MMA's repayment. Dkt. 74 at 9. Because Velawcity allegedly received most of the loan proceeds, Monson asserts that EAJF knew it was funding the barratry scheme and actively concealed its actions. *See* Dkt. 56 ¶¶ 64, 70, 79; Dkt. 74 at 9-10.

Conversely, EAJF contends that Monson's "information and belief" pleading and limited factual allegations do not adequately substantiate that EAJF knowingly financed barratry in violation of Section 38.12(b)(1) and (2). Dkt. 64 at 12-16. EAJF maintains that the loans were arm's-length transactions made for MMA's general operations, and that Monson's

9

allegations are conclusory. *Id.* at 15. According to EAJF, neither the nature nor the timing of the loans demonstrates that EAJF knowingly financed or concealed the barratry scheme. *See id.* at 12-16; Dkt. 76 at 2-4.

Monson's heavy reliance on allegations made upon "information and belief" implicates specific pleading standards. "'[I]nformation and belief' pleadings are generally deemed permissible under the Federal Rules ...." *Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (2d ed. 1990)). "In alleging fraud ... knowledge[] and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, "[t]he *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant ... or where the belief is based on factual information that makes the inference of culpability plausible ...." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

Pleading on information and belief, however, carries a caveat: "the complaint must set forth a factual basis for such belief." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). The plausibility standard "does not impose a probability requirement at the

pleading stage," but "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the necessary claims or elements. *Twombly*, 550 U.S. at 556. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

*Twombly*, for example, evaluated the adequacy of a complaint's "information and belief" allegation that existing telecommunications providers had formed an unlawful agreement to avoid competition and block new entrants, in violation of federal antitrust law. 550 U.S. at 550-51, 564-69. The complaint claimed in large part that the defendants' "parallel course of conduct" to hinder competition and drive up prices showed the alleged illegal agreement. *Id.* at 551. But the Supreme Court held those allegations were insufficient to state a plausible conspiracy claim. *Id.* at 567-69. This is because the asserted conduct was not only compatible with, but more likely explained by, lawful and uncoordinated free-market behavior. *Id.* Dismissal was therefore required because the plaintiffs had "not nudged their claims across the line from conceivable to plausible …." *See id.* at 570.

Similarly here, Monson's complaint does not cross the threshold between a merely conceivable claim to one that is plausible. Her allegations about EAJF's culpability largely hinge on the loans' chronological alignment with

11

MMA's payments to Velawcity. *See* Dkt. 74 at 9.³ Monson suggests that MMA (1) paid for its December 2021 MSA with the first EAJF loan made in September 2021, (2) covered the February 2022 MSA with the March 2022 loan, (3) paid for the May 2022 MSAs with funds from the March 2022 loan, and (4) may have paid the August 2022 MSA with the June and November 2022 loan. Dkt. 56 ¶¶ 10, 59-61; Dkt. 74 at 9. But this sequence of events hardly suggests that, at the time the loans were made, EAJF had the requisite knowledge that the funds would be used not just to solicit clients, *but to solicit them through means of barratry*. *See* Tex. Penal Code § 38.12(b)(1)-(2).

The timing between the loans and MMA's activities is wholly consistent with ordinary lending practices. Monson alleges that the loans were tied to a specific percentage of the fees earned and that EAJF held liens on MMA's property, and perfected security interests in MMA income and revenue to ensure repayment. Dkt. 56 ¶¶ 59, 62-63; Dkt. 74 at 9-10. There is nothing unusual about those facts. EAJF's decision to bank on MMA's ability to repay the loans hardly supports a reasonable inference that it knew MMA would employ an illegal scheme to generate revenue. Nor does EAJF's security interest in MMA's property suggest knowledge of any impropriety, as "banks

---

³ Although Monson claims that the first loan to MMA was made in November 2021, her complaint concedes that the original loan agreement was executed on September 30, 2021. Dkt. 56 ¶ 59. There is no mention of a loan in November 2021.

12

routinely take a security interest in an asset acquired through its financing." *Bane v. Sigmundr Expl. Corp.*, 848 F.2d 579, 581 (5th Cir. 1988).

Monson overstates her position by arguing that it does not "take much of an inference to conclude" MMA provided EAJF extensive business plans, financial projections, and a description of how MMA planned to obtain its clients to repay the loans. *See* Dkt. 74 at 2, 9. Even if MMA logically would have provided some projections and plans to EAJF, it requires a quantum leap to assume that MMA would have further disclosed its intent to employ unlawful barratry as part of its plan. Monson supplies no facts to bridge that gap. *Cf. Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 665 (S.D. Tex. 2010) (conclusory allegations that financier knew his payments to UN program were used to fund terrorist attacks did not support a plausible inference that he acted with the requisite knowledge). Without plausible allegations that EAJF knew or believed its loans would fund unlawful barratry, Monson has not stated a viable claim under Section 82.0651 of the Texas Government Code.

### C. EAJF did not solicit or pay another to solicit employment in violation of Section 38.12(a)(4).

The Court agrees with EAJF that Section 38.12(a)(4) of the Texas Penal Code provides no basis for recovery. As that provision states, "[a] person commits an offense if, with intent to obtain an economic benefit the person … pays or gives or offers to pay or give a person money or anything of value to solicit employment …." Tex. Penal Code § 38.12(a)(4). "'Solicit employment' means to communicate … with a prospective client … concerning professional employment within the scope of a professional's license … for the purpose of providing professional services to the prospective client …." Tex. Penal Code § 38.01(11). The paradigmatic example of such conduct involves a lawyer "pa[ying] non-lawyers to solicit remunerative employment *for himself*." *See O'Quinn v. State Bar of Tex.*, 763 S.W.2d 397, 403 (Tex. 1988) (emphasis added) (citing Tex. Penal Code Ann. § 38.12(a)(4)); *see also State v. Mercier*, 164 S.W.3d 799, 814-15 (Tex. App.—Corpus Christi 2005, pet. ref'd) (Section 38.12(a) "criminalize[s] various forms of solicitation of prospective legal clients by attorneys or their representatives"); *State v. Sandoval*, 842 S.W.2d 782, 790 (Tex. App.—Corpus Christi 1992, pet. ref'd) ("Sandoval procured Noe Torres to solicit for him employment by persons unknown to prosecute a suit ….").

Construed in context, Section 38.12(a)(4) does not extend to EAJF's alleged conduct. "That seems especially true here given other parts of the

14

statutes under consideration, and our obligation to interpret words in conjunction with their context and not in isolation." *See O'Neal v. State*, 2016 WL 3136039, at *2 (Tex. App.—Amarillo May 31, 2016, pet. ref'd) (citing Tex. Gov't Code § 311.011(a)); *see also Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) ("In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole.").

Section 38.12(a)(2) and (a)(4) penalize "solicit[ing] employment" and "pay[ing] … a person … to solicit employment." Tex. Penal Code § 38.12(a)(2), (a)(4). Contrast that with Section 38.12(b)(1) and (b)(2), which impose liability for "knowingly financ[ing] the commission of an offense under Subsection (a)" and "invest[ing] funds" with the knowledge or belief that the funds "are intended to further the commission of an offense under Subsection (a)." Tex. Penal Code § 38.12(b)(1)-(2).

Harmonizing these provisions, Section 38.12(a)(4) does not encompass a lender's provision of funds because Section 38.12(b)(1) and (b)(2) already capture that situation. Otherwise, Section 38.12(b)(1) and (b)(2) would be superfluous. *See City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 57 (Tex. 2015) (per curiam) ("As a general principle, we eschew constructions of a statute that render any statutory language meaningless or superfluous."). Worse, construing Section 38.12(a)(4) to cover the same conduct provides an

15

end-run around the knowledge requirement specifically included in Section 38.12(b)(1) and (b)(2).

A natural reading of Section 38.12(a)(4) also does not capture the act of loaning money. Section 38.12(a)(4) applies only to someone who "pays" or "gives" (or offers to pay or give) money to solicit employment. "Paying" implies providing funds in exchange for a good or service, or to discharge a prior obligation. *See First Nat'l Bank of Farmersville v. Greenville Nat'l Bank*, 19 S.W. 334, 335 (Tex. 1892) ("'[T]o pay' means 'to discharge one's obligation to another.'"); Pay, Black's Law Dictionary (12th ed. 2024) (defining "pay" as "[c]ompensation for services performed; salary, wages, stipend, or other remuneration given for work done"). And "giving" money suggests that there is no repayment obligation. *See, e.g.*, Give, Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/give (last visited Sept. 18, 2024) (defining "give" as "to make a present of"). But here, EAJF did not purchase anything from MMA, did not provide the funds to satisfy EAJF's pre-existing obligation to MMA, and did not provide those funds to MMA without expecting repayment.

Monson's reliance on Section 38.12(a)(4) is problematic even assuming the words "pay" or "give" extended to loaning funds. Under Monson's theory, EAJF loaned funds to MMA, and MMA used those funds to pay Velawcity for unlawful solicitations on MMA's behalf. Dkt. 56 ¶¶ 57-61, 64, 66. If true,

16

Section 38.12(a)(4) would apply *to MMA*, as the entity who paid for the allegedly barratrous acts. But EAJF's loan is a step removed from MMA's act of "pay[ing] or giv[ing] … a person [*i.e.* Velawcity] money or anything of value to solicit employment." To reach EAJF's conduct would require modifying Section 38.12(a)(4) to prohibit "pay[ing] or giv[ing] … a person money [*when that person then pays or gives or offers to pay or give* to another person money] or anything of value to solicit employment." But this Court cannot "rewrite the statute under the guise of interpreting it." *In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014) (orig. proceeding).

As EAJF correctly asserts, Monson's pleading "advances no scenario in which [EAJF] solicited employment in violation of Texas Penal Code [S]ection 38.12(a)(4)." Dkt. 64 at 12. Monson has not pleaded an actionable claim against EAJF based on Section 38.12(a)(4).

### III.     Monson has not shown good cause for allowing leave to amend.

Monson's response to the motion to dismiss embeds—merely in a footnote—a barebones request for leave to amend. *See* Dkt. 74 at 13 n.4. For her Section 82.0651 claims under Disciplinary Rule 7.03(e) and Texas Penal Code § 38.12(a)(4), amendment would be futile because these claims are barred as a matter of law. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (amendment is futile when the proposed new pleading "could not survive a motion to dismiss"); *supra* Parts II.A & C.

17

Her cause of action under Section 38.12(b)(1) and (b)(2) is different because it lacked sufficient detail to survive EAJF's motion to dismiss. *See supra* Part II.B. Nevertheless, Monson's failure to show good cause warrants denying leave to amend that claim.

Although Rule 15(a) provides that courts "should freely give leave" to amend," Fed. R. Civ. P. 15(a)(2), "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.*; *see also* Fed. R. Civ. P. 16(b)(4).

"The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters.*, 315 F.3d at 535 (quoting 6A Federal Practice and Procedure § 1522.1). Several factors are relevant: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (alterations and quotation omitted).

Monson attempts to bypass the good cause requirement by invoking the liberal standard of Rule 15(a) merely because EAJF was newly added to this

suit. *See* Dkt. 74 at 13 n.4. That is not the law. Instead, courts have denied similar requests for leave to amend where a plaintiff fails to address the good cause standard after the deadline for amending pleadings has passed. *See, e.g.*, *Fahim v. Marriott Int'l, Inc.*, 2007 WL 3118186, at *2-3 (S.D. Tex. Oct. 22, 2007) (denying leave to amend for failure to explain untimely request), *aff'd sub nom. Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344 (5th Cir. 2008). And here, the deadline for amending pleadings expired long ago. *See* Dkt. 37 at 1 (November 15, 2023, deadline). Monson's failure to address the good cause standard forecloses her conclusory request for leave to amend this claim.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendants Equal Access Justice Fund LP's and EAJF ESQ Fund LP's motion to dismiss (Dkt. 64) be **GRANTED**, and all of Plaintiff Katherine Monson's claims against those entities be **DISMISSED WITH PREJUDICE**. It is further **RECOMMENDED** that Monson's conclusory request for leave to amend be **DENIED**.

For clarity, the claims against Defendants McClenny, Moseley & Associates,[4] James McClenny, John Zachary Moseley, and Tort Network LLC remain pending.

---

[4] Because McClenny, Moseley & Associates filed for bankruptcy, all claims against it have been stayed. *See* Dkt. 68.

19

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on September 19, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge