**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KATHERINE MONSON, individually and on behalf of all others similarly situated** | § § § | |
| **Plaintiff,** | § § § | |
| **v.** | § § § | **Civil Action No. 4:23-cv-00928** |
| **MCCLENNY, MOSELEY & ASSOCIATES; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; TORT NETWORK, LLC; EQUAL ACCESS JUSTICE FUND LP; and EAJF ESQ FUND LP** | § § § § § § § | |
| **Defendants.** | | |

**PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S**
**SEPTEMBER 19, 2024 MEMORANDUM AND RECOMMENDATION ON**
**<u>MOTION TO DISMISS (Rec. Doc. No. 89)</u>**

**MAY IT PLEASE THE COURT:**

Plaintiff, Katherine Monson, individually and on behalf of all others similarly situated ("Monson"), submits this memorandum in support of her Objection to Magistrate Judge's September 19, 2024 Memorandum and Recommendation (Rec. Doc. No. 89) addressing the motion to dismiss filed by Defendants Equal Access Justice Fund LP and EAJF ESQ Fund LP (collectively, "EAJF" or "Equal Access Defendants")(Rec. Doc. No. 64).

## <u>INTRODUCTION</u>

The pertinent background involves a scheme that has wreaked havoc among persons injured by several devastating hurricanes as well as the judicial system. This scheme, as it relates to Monson, commenced on July 17, 2022, when an unsolicited text message was sent without any indication it was being directed by or for benefit of Defendants attorney James McClenny, attorney Zach Moseley, and McClenny, Moseley and Associates (collectively, "MMA" or "Attorney

1

Defendants"), referencing monetary benefits as a result of Hurricane Ida. Monson used the link in the unsolicited text message and was directed to website that likewise did not identify the Attorney Defendants, and she was asked to respond to a series of questions. It was not until Monson clicked on a link related to the entreaty "See If I Qualify" that she first became aware that the Attorney Defendants were involved and that it was a solicitation for legal representation. At that point, it was too late, and as chronicled in the Amended Complaint (Rec. Doc. No. 56), the Defendants began a communication onslaught that by its very nature clearly demonstrated a violation of privacy and intrusion upon seclusion.

Common with conspiracy schemes, as preliminary proceedings unfold, new facts and defendants reveal themselves, and this litigation was no different in that respect. The Plaintiffs discovered yet another pattern associated with the scheme involving funding agreements with EAJF.[1] In April of 2024, EAJF was added as a defendant in the present action, and the pleadings were amended accordingly to include well-plead and specific facts supporting theories of liability against EAJF as it relates to the present scheme.

Monson has alleged that the Equal Access Defendants knowingly provided money to MMA to allow it to undertake its barratry scheme. Given the sums of money borrowed by MMA and its principals, the nature of the re-payment plan and the amount of money paid to Defendant Tort Network, LLC, d/b/a Velawcity ("Velawcity"), it is reasonable to infer that the Equal Access Defendants were provided financial projections and a description of how MMA planned to obtain the thousands of clients necessary to repay $20 million in loans. MMA's marketing plans could not have been unknown by the Equal Access Defendants. It was too big of a loan to be

---

[1] *See* Amended Complaint, Rec. Doc. No. 56 ¶¶ 59-61; *See also* Opposition to EAJF Motion to Dismiss, Rec. Doc. No. 74 at 9.

disinterested, and subject to an extensive due diligence review process to help EAJF understand risks and liabilities including but not limited to identifying any legal risks, regulatory compliance, financial and operational viability, and other actions necessary to reduce the risks to the lender. The success of lending transactions relies heavily on a thorough and comprehensive due diligence process. Considering EAJFs duty to conduct and uphold fair lending processes, upon information and belief, the pattern and timing of the lending history combined with the diligence review process revealed MMA's scheme, and EAJF knowingly proceeded. Accordingly, Monson has stated a claim and the Equal Access Defendants' motion to dismiss for failure to state a claim should be denied.

In recommending a 12(b)(6) dismissal in favor of EAJF, the Magistrate Judge cited the appropriate legal standard and analysis grounded in plausible facts of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and reasonable inferences based under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But respectfully, the recommendation fails to properly apply the standard to the allegations at issue particularly in light of the recognition that in scienter-based claims rarely does the perpetrator confess knowledge in full dossiers. Accommodations are made toward the specificity in pleadings as a result. It cannot be said in this case, that EAJF do not have a basis of understanding the claims made against them: they knowingly funded an illegal scheme to recruit clients for their borrower.

Furthermore, the recommendation respectfully fails to consider the distinguishing procedural posture, parallel proceedings, and significant background factors of this case. Leave to amend should be granted in the interest of justice in the event that this Court finds the claims as presently alleged against EAJF to be insufficient.

This Court is to afford deference towards Plaintiffs when considering the well-pleaded facts. Plaintiff should survive the Rule 12(b)(6) motion and the case be allowed to progress towards just resolution. This action seeks to prevent repeat offenses flooding the courts after each and every storm season with illegally obtained "clients" that often are not aware of who is purporting to represent them. Rather than prematurely releasing a plausibly culpable party, this Court should allow the case and discovery process to proceed so that the merits of the claim can be fully developed.

## THE ALLEGATIONS AT ISSUE

The Equal Access Defendants were made parties to this lawsuit via Monson's First Amended and Restated Complaint for Class Action and Damages ("the Amended Complaint") (Rec. Doc. No. 56).

As provided in the Amended Complaint:

10.

MMA and Velawcity entered into several "Marketing Service Agreements" on December 8, 2021, February 5, 2022, May 5, 2022, May 23, 2022, and August 2, 2022 ("MSA" or "MSAs").

11.

In these MSAs, Velawcity stated that it would be acting as an agent of MMA to reach out to potential clients on MMA's behalf and provide potential clients with MMA's engagement letter.

12.

MMA agreed in these MSAs to pay Velawcity a set amount per "pre-screened potential client" that was "delivered" to MMA.

13.

In total, through these Marketing Service Agreements, MMA paid Velawcity in advance a minimum of $13,938,000 for at least 4,628 clients.

14.

These MSAs were executed by Velawcity and MMA in Texas.

15.

To deliver on its obligations under these MSAs, Velawcity sent out unsolicited communications to thousands of individuals, including Plaintiff, via text message and other means, that the recipient has a hurricane storm damage claim pending.

16.

These communications contained a link to a form and stated that the form needed to be filled out in order to claim compensation. Some of these communications even contained specific instructions for how the recipient should answer the questions on the form.

17.

These communications did not contain the word "ADVERTISEMENT" or in any other way indicate that they were advertising material for MMA or MMA's services.[2]

Specifically, as to the Equal Access Defendants, the Amended Complaint alleges:

58.

In order to assist it in funding the Velawcity Scheme, MMA turned

---

[2] See Amended Complaint, Rec. Doc. No. 56 ¶¶10-17

to the Equal Access Defendants.

59.

Defendant, Equal Access Justice Fund LP made loans to Defendant MMA, and other affiliated persons and entities, pursuant to an original loan agreement dated September 30, 2021 and a subsequent loan agreement dated March 10, 2022 for a total loan amount of $10 million for which the Equal Access Justice Fund LP expected to be repaid interest only for a period of time, but after the maturity date, MMA agreed to make mandatory payments on the 10th day after the end of each calendar month in an amount equal to 20% of MMA proceeds for such calendar month.

60.

Pursuant to an amendment to the subsequent loan agreement dated November 10, 2022, Equal Access Justice Fund LP loaned MMA and other affiliated persons and entities an additional $5 million under those same terms.

61.

Additionally, on or about June 10, 2022, MMA entered into a loan agreement with EAJF ESQ Fund LP, for an additional $10 million, tracking the same terms and payment obligations, requiring a percentage of MMA's monthly collections, as provided for in the loan agreements with Equal Access Justice Fund LP.

62.

In addition to the repayment obligations, the various loan agreements also entitled the Equal Access Defendants to liens for MMA's real property, personal

property and fixtures.

63.

Upon information and belief the Equal Access Defendants have perfected a security interest in all accounts, income, receipts, revenue and other assets of MMA, thereby asserting liens on the contingent interest / attorneys' fees contractually agreed to and/or earned by MMA by virtue of their engagement and fee agreements with clients, resulting from, arising out of, or related to any lawsuits and client settlements to which MMA has obtained or could obtain from the Plaintiff and putative class members.

64.

Upon information and belief, the Equal Access Defendants knew MMA would use the proceeds of the loans to fund the scheme described above.[3]

## LAW AND ARGUMENT

This Court should not accept the Magistrate's view that implausible claims have been stated. The amended complaint directly puts EAJF Defendants on notice that they are accused of knowingly funding an illegal barratry scheme.

### 1.    Monson is entitled to de novo review of her objection

When a party timely objects to a Magistrate Judge's report and recommendation, the District Court is to review the objections, de novo.  As set forth in the 28 USC 636(b)(1)(C) "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Furthermore, the statute provides "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or

---

[3] Amended Complaint, Rec Doc No. 56.

7

recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*. Monson is therefore entitled to a de novo review of this objection to the Magistrate Judge's Memorandum and Recommendation.

**2.      The 12(b)(6) standard in the context of scienter claims.**

The district court must construe the allegations in a complaint favorably to the pleader and must accept as true all well pleaded facts in the complaint. *See Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Importantly, and missed by the Magistrate, dismissal for failure to state a claim "is viewed with disfavor and is rarely granted." *Igwe v. Menil Found., Inc.*, 2019 WL 13421208, at *1 (S.D. Tex. Feb. 6, 2019)(*citing Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.' " *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558) (internal quotation marks omitted); *Hudson v. Pot-O-Gold Rentals, LLC*, 2018 WL 5732081, at *1 (S.D. Tex. July 24, 2018), report and recommendation adopted,

2018 WL 3862092 (S.D. Tex. Aug. 14, 2018); *Lubrizol Specialty Prod., Inc. v. Flowchem LLC*, 165 F. Supp. 3d 534, 538 (S.D. Tex. 2016).

Another important part of the standard of review for a 12(b)(6) motion, which was discussed but not applied by the Magistrate Judge, is that when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). [4] As such, allegations of "information and belief" can be enough to state a claim. *Id.*[5] The Fifth Circuit and its district courts utilize this principle in the treatment of fraud based claims. *Dominguez v. Target Corp.*, 2019 WL 1004569, at *3 (S.D. Tex. Feb. 8, 2019), <u>report and recommendation adopted sub nom.</u> *Del Rosario Dominguez v. Target Corp.*, 2019 WL 1003405 (S.D. Tex. Feb. 28, 2019).

---

[4] *See Innova Hosp. San Antonio:*

> "Our holding underscores the principle that when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) ("Several Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession."). As the Second Circuit has stated, "[t]he *Twombly* plausibility standard, which applies to all civil actions, ... does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant ... or where the belief is based on factual information that makes the inference of culpability plausible ...." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted)."

892 F.3d at 730.

[5] The *Twombly* plausibility standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant ... or where the belief is based on factual information that makes the inference of culpability plausible." *Id.*

**3.      Monson asserts a cognizable claim under Section 38.12(b)(1) and (b)(2) of the Texas Penal Code**

In light of these standards, the Magistrate Judge erred in concluding that the Plaintiff's allegations failed to demonstrate EAJF's knowledge of MMA's "intent to employ unlawful barratry as part of its plan" in order to support a plausible inference under those standards (Rec. Doc. No. 89 at 13).

The legal basis for liability is extant. Texas Civil Liability for Prohibited Barratry, TX GOVT § 82.0651, not only references attorneys, but also "other persons" and makes no distinction as its focus is on the referenced violations that are found in Section 38.12 of the Penal Code.  The Texas Barratry Statute provides, in pertinent part:

> (c) A person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, …, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.
>
> (d) A person who prevails in an action under Subsection (c) shall recover from each person who engaged in barratry:
>
>> (1) a penalty in the amount of $10,000;
>> (2) actual damages caused by the prohibited conduct; and
>> (3) reasonable and necessary attorney's fees.
>
> (e) This section shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection.

TX GOVT § 82.0651.  The language of the statute makes clear that the reach extends beyond the attorneys, but also to other persons and in particular those that finance the schemes.

Section 38.12 of the Texas Penal Code in turn does not refer to attorneys specifically, but rather "persons".  The relevant portions provide:

§38.12, Penal Code, Barratry and Solicitation of Professional Employment

(a) A person commits an offense if, with intent to obtain an economic benefit the person:

*   *   *

(4) pays or gives or offers to pay or give a person money or anything of value to solicit employment;

(b) A person commits an offense if the person:

(1) knowingly finances the commission of an offense under Subsection (a);

(2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a)

V.T.C.A. Penal Code §38.12. Thus, financers of section (a) offenses- involving paying money to solicit legal engagements- are liable under the Penal Code and, as such, are subject to private causes of action under the barratry statute.

Monson has asserted specific facts establishing that all Defendants, including the Equal Access Defendants, engaged in an improper solicitation scheme to sign up clients. The majority of the first 57 paragraphs of the Amended Complaint set forth specific allegations as to that scheme. The allegations include specific dates upon which such communications were received, as well as the content of the communications.

Other paragraphs set forth above address, the facts related to the Equal Access Defendants. Critically, the dates of the multiple service agreements entered into by MMA with Velawcity coincide with the infusions of cash provided by the Equal Access Defendants. For example, the first loan to MMA is made in November 2021, and the first agreement with Velawcity was made about one month later.  An even larger loan was confected in March 2022, in part to cover a February 2022 MSA and two more MSAs executed in May of 2022. This is in addition to a loan of another $5 million from EAJF Esq, Ltd in June 2022.

The Equal Access Defendants would have required a significant amount of projected financials, as well as business plans to evaluate the Equal Access Defendants prospects for getting

their loans paid back.  Velawcity appears to have obtained the majority of the proceeds of the loans as alleged in the Amended Complaint, such the Equal Access Defendants were made aware of the scheme.  This is particularly true, when the loans were tied to a specific percentage of the fees being earned for each particular matter.[6]  The Equal Access Defendants knew how and why MMA was going to be able to fund these payments and the methods by which clients would be obtained.

The Magistrate Judge refused to accept these highly plausible inferences and in doing so misapplied the governing legal standard. This standard recognizes that it is reasonable to draw inferences and that allegations made upon "information and belief.[7]" Again, authorities recognize that often "'permitting allegations on information and belief is a practical necessity' and should be allowed 'when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but [it] has sufficient data to justify interposing an allegation on the subject.'" Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (4th ed. Apr. 2023 Update).

Monson has alleged that the Equal Access Defendants knew about the scheme when they funded the operation.[8] Other than blanketed denials, the Equal Access Defendants have not provided any detail or evidence that they did not in fact know, nor are they willing to respond to discovery. Given that involvement in schemes that violate the law are typically not broadcast, Monson should be able to move forward on this claim.

---

[6] See Amended Complaint, Rec. Doc. No. 56 ¶¶ 59 and 63.
[7] "Pleadings based on 'information and belief 'are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant." *Centennial Bank v. Homes*, 2024 WL 733649, *11 (N.D. Tex- Lubbock), citing *Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004).
[8][8] See Amended Complaint, Rec. Doc. No. 56 ¶ 64.

This Court has examined the *Innova* principle in a fraud case and held that plaintiff "has pled sufficient facts – based upon the information readily available to it – to show that it is not engaged in a fishing expedition or wild goose chase." *Sys. One Holdings LLC v. Campbell*, No. B:18-cv-54, 2018 WL 4290459, at *8 (S.D. Tex. Aug. 21, 2018). Given that the Court "must take into account System One's 'limited access to crucial information," this Court believed that it "only makes sense to allow this claim to go forward and allow System One access to the discoverable information that Energy Challenges uniquely controls." *Id.* This Court suggested that to "conclude otherwise simply rewards hiding the ball, by demanding that Plaintiffs plead facts at the outset of the case that can only be readily ascertained through discovery." *Id. See also Dominguez v. Target Corp.*, 2019 WL 1004569, at *3 (S.D. Tex. Feb. 8, 2019), report and recommendation adopted sub nom. Del Rosario Dominguez v. Target Corp., 2019 WL 1003405 (S.D. Tex. Feb. 28, 2019)(noting the use of this *Innova* principle to a fraud claim is noteworthy because such claims are subject to heightened pleading standards requiring that '[i]n alleging fraud or mistake, a party must state with *particularity* the circumstances constituting fraud or mistake.' Fed. R. Civ. P. 9(b)").

In another instance in *Prophet v. Myers*, 645 F. Supp. 2d 614, 618 (S.D. Tex. 2008) plaintiff claimed defendants made misrepresentations and identified the vehicle through which they did so, a demand letter issued by them. The Court found:

> "Based on these allegations, Prophet has sufficiently put Defendants on notice of the challenged assertions and of what they must defend. Indeed, Defendants' assertion that 'it is impossible to determine that any facts exist to support Plaintiff's fraud-based claims' is patently frivolous. Prophet's Complaint meets both the liberal pleading standards of Rule 8(a) and the heightened pleading requirements of Rule 9(b). Accordingly, Defendants' motion to dismiss on this ground is denied." *Id.*

Similarly, this Court in *Seven Seas Petroleum, Inc. v. CIBC World Markets, Corp.*, 2010 WL 2277489, at *9 (S.D. Tex. June 4, 2010) upheld the sufficiency of scienter allegations related to fraud. There the plaintiff alleged defendant represented in an opinion letter that a transaction

was "fair", when in fact the transaction allegedly was not and that at the time when it made this representation, it "knew, or should have known, that its fairness opinion was "incorrect and false and that certain representations or omissions in its fairness opinion made the opinion false or misleading." The Court found this allegation was sufficient, although the plaintiff would "maintain the burden of proving that [defendant] made fraudulent representations going forward in this case, including that it knew its representations were false or that it lacked knowledge as to their truth, the Court cannot conclude that fraud cannot be proven at this stage in the case." *Id.* at *9. The Court further found sufficient allegation that Defendant was aware of the plaintiff's Directors' fiduciary duties of care, loyalty, and candor to the Company. By issuing a fairness opinion that it never should have rendered and that was incorrect, by helping the interested directors to conceal material information …, [defendant] knowingly and intentionally aided and abetted the Directors' breaches of fiduciary duties and/or conspired with the Directors to breach the Directors' fiduciary duties." *Id.* at *10.[9]

Here, Plaintiff alleged that Defendants knew they were funding an illegal barratry scheme. Plaintiff has pointed to other alleged facts which give inferences as to this knowing participation in the illegal scheme, such as the amount of the loans, their timing, and the manner of repayment. This sufficiently puts Defendants on notice of the claims against them and of what they must defend. This Court should not reward "hiding the ball," by demanding that Plaintiff plead facts at the outset of the case that are solely in the possession of the defendant and can only be readily ascertained through discovery.

---

[9] See also *Janvey for Stanford Int'l Bank, Ltd. v. Alvarado*, No. 3:10-CV-2584-N, 2015 WL 13739416, at *1 (N.D. Tex. June 24, 2015)(finding sufficient allegations that lawyer defendants "knew or should have known" that an organization was a Ponzi scheme and yet continued to provide legal services that enabled the organization to evade regulatory detection and continue the scheme.").

4.      **Magistrate Judge erred in declaring Monson's failed to show good cause for Leave to File Amendment Complaint.**

The Magistrate Judge determined good cause must be shown to afford the right to amend a complaint in lieu of outright dismissal since the scheduling order deadline for an amendment has passed. "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C. v. SouthTrust Bank of Ala.*, NA, 315 F.3d 533, 536 (5th Cir. 2003). S&W Enters., 315 F.3d at 535 (quoting 6A Federal Practice and Procedure § 1522.1). Several factors are relevant: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." Id. at 536 (alterations and quotation omitted).

Good cause plainly exists for leave considering the procedural history of this case. Plaintiff did not move for leave to amend because there was no pending 12(b)(6) motion, so that it requested leave in the alternative as soon as the sufficiency of its initial statement of claims against the EAJF defendants was challenged. While the amendment deadline was November of 2023, EAJF Defendants were added in April of 2024.  They did not challenge the sufficiency of the claims against them until May of 2024. No prejudice would be suffered by EAJF in granting an amendment as they have only been added to the case fairly recently.

Moreover, as Plaintiff awaited certification of the class in the amended pleadings, that very same month in April of 2024, MMA filed for Bankruptcy. The Court entered an Order to Stay the present action with respect to MMA and to take under advisement the remaining parties' considerations on the continuation of the case against the other defendants.

The Court ultimately denied requests to stay the claims against the other defendants on June 24, 2024. During this Stay, multiple deadlines passed, and parties presented unopposed

motions to defeat these deadlines including but not limited to McClenny's unopposed motion for extension to answer cross-claim in August of 2024, and EAJFs unopposed motion to extend expert witness deadlines in July of 2024.[10]

Most recently, and also not mentioned in the Memorandum and Recommendation, is EAJFs acknowledged receipt of Rule 30(b)(6) Deposition and Rule 34 Request for Production to EAJF from the Plaintiff transmitted on September 6, 2024.[11] Also missing from pertinent background is the Plaintiffs' Answer to EAJFs Interrogatories and Request for Production. In an attempt to avoid their Rule 34 obligations, EAJF filed a motion to stay discovery which the Magistrate Judge granted, and Plaintiff will likely appeal. In the interest of justice and federal civil procedure, the Plaintiff requests that the Judge deny EAJFs motion to dismiss, or in the alternative, stay this motion to dismiss pending completion of EAJFs Answer to Rule 34 Request for Production and subsequently allowing the Plaintiffs to amend the pleadings accordingly.

Instead of denying Plaintiff's request to amend, an alternative and less prejudicial approach would be a status conference to set appropriate deadlines all parties can maintain and adhere to without continued court and party resources being wasted. After a very limited window of opportunity to conduct discovery, the Plaintiffs are presently on the doorstep to obtaining additional concrete evidence not only establishing liability in the present case, but preventing the litany of law firms that will capitalize on EAJFs invincible "arms-length" lending that is available every hurricane season and in the wake thereafter.

At a minimum, in the event the recommendation on the failure to state a claim is accepted, the request for leave should be granted to be consistent with principals of fairness followed in this

---

[10] *See* Rec. Doc. No. 78, 79 and 82.
[11] *See* Exhibit A. Rule 30(b)(6) Deposition and Rule 34 Request for Production to EAJF.

Circuit. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir.2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case."). This is not an incidence of a frivolous or futile proposed change as the Texas Barratry statute clearly contemplates a cause of action against financiers thus there is no basis to deny leave to amend. *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 650 (S.D. Tex. 2010)(discussing 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990); *see also Ayers v. Johnson,* 247 Fed.Appx. 534, 535 (5th Cir.2007) (unpublished) (per curiam) (" '[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.' ").

## CONCLUSION

The Magistrate Judge erred in concluding that plausible barratry claims were not stated against EAJF Defendants. Accordingly, Monson's objection should be sustained, and the motions to dismiss should be denied.  In the alternative, good cause exists to allow leave to amend the complaint.

**<u>\*\*\*SIGNATURE BLOCK ON FOLLOWING PAGE\*\*\*</u>**

17

Respectfully Submitted:

*/s/ Robert E. Couhig, Jr.*
Robert E. Couhig, Jr.
(Tx Bar No. #04877400)
Jonathan P. Lemann
(Tx Bar No. #24054333)
**COUHIG PARTNERS, LLC**
1100 Poydras Street, Suite 3250
New Orleans, LA 70163
Telephone: (504) 588-128
Telecopier: (504) 588-9750
couhigre@couhigpartners.com
lemannjp@couhigpartners.com


Ron A. Austin #3865318
Scott Huete #24107150
400 Manhattan Blvd.
Harvey, Louisiana 70059
Telephone: (504) 227-8100
Facsimile: (504) 227-8122
raustin@ronaustinlaw.com
shuete@ronaustinlaw.com

AND

Lance Christopher Kassab
Texas State Bar No. 00794070
Federal Bar No. 433516
David Eric Kassab
Texas State Bar No. 24071351
Federal Bar No. 1561652
1214 Elgin Street
Houston, Texas 77004
Telephone: 713-522-7400
Facsimile: 713-522-7410
lance@kassab.law
david@kassab.law

*Attorneys for Plaintiff*

**<u>***CERTIFICATE OF SERVICE ON FOLLOWING PAGE***</u>**

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of October 2024, the foregoing document was filed with the Court via the Court's CM/ECF system and served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

*s/Robert E. Couhig, Jr.*
Robert E. Couhig, Jr.
